**JAPAN AIR LINES CO., LTD., and the Tokio Marine & Fire Insurance Co., Ltd., and other co-insurers under Aircraft Insurance Policy No. 75091101, Petitioners,**

v.

**STATE of Alaska, Respondent.**

**No. 5027.**

Supreme Court of Alaska.

June 5, 1981.

---

James J. Delaney and Vaughn S. Armstrong, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for petitioners.

Lloyd B. Ericsson, Martin, Bischoff, Templeton, Biggs & Ericsson, Portland, Oregon, Hal P. Gazaway, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for respondent.

OPINION

Before RABINOWITZ, C.J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

BURKE, Justice.

This petition for review presents the question of whether the "discretionary function" exception to Alaska's state claims act exempts the state from possible negligence liability in the state's design of an airport taxiway.

In December 1975, a Japan Air Lines (JAL) Boeing 747 slid off a taxiway at Anchorage International Airport. The accident occurred as the aircraft was taxiing in preparation for takeoff. The portion of the taxiway where the accident took place was covered with "black ice," formed by rain falling on frozen pavement.

As a result of the accident, the aircraft was severely damaged. JAL and its insurers, Tokio Marine & Fire Insurance Company, Ltd., and their co-insurers brought this action in the superior court against the

state, which owns and operates the airport, seeking to recover damages for cost of repair and loss of use of the aircraft. The parties have stipulated that the cost of repairing the aircraft was $19,743,029.61.

JAL's complaint specified a number of instances of alleged negligence on the part of the state. The superior court granted partial summary judgment in favor of the state with respect to JAL's allegation that the state was negligent "in maintaining and operating an east-west taxiway that is 25 feet less [in width] than the current [Federal Aviation Administration] standard, despite the fact that it contains substantial sloping inclines on either side, and is subject to hazardous icing and cross wind conditions." In its decision the superior court held that "the conclusion that these decisions are immune from liability as valid exercises of the state's discretionary function is inescapable. The location and size of the runways at ANC necessarily required consideration of the impact on surrounding airports, meteorological conditions, and available funds. Such considerations are indicia of the broad policy decisions meant to be immune from liability." Following a motion for reconsideration, the court clarified its prior order, stating that it was intended to encompass not only the allegation that federal standards on the width of the taxiway were violated, but also JAL's "allegations of negligent design generally, including failure to adhere to ICAO [International Civil Aviation Organization] standards, failure to provide 35-foot shoulders, and a 220 foot taxiway safety area."

It is undisputed that the taxiway where the accident occurred was specifically designed by engineers employed by the state to accommodate wide-body jets such as the Boeing 747. The superior court's ruling of partial summary judgment for the state was based on its conclusion that the design decisions in question were within the shield of immunity provided by the discretionary function exception to state tort liability, AS 09.50.250.[1] We find that the design of the taxiway is not within the discretionary function exception, and therefore the state may be held liable for negligence in the design of the taxiway.

The purpose of the discretionary function exception is to preserve the separation of powers inherent to our form of government by recognizing that it is the function of the state, and not the courts or private citizens, to govern. Essentially, it seeks to ensure that private citizens do not interfere with or inhibit the governing process by challenging through private tort actions basic governmental policy decisions. *Adams v. State*, 555 P.2d 235, 244 (Alaska 1976). It is well-settled, however, that not all decisions or acts of state employees fall within the exception. Rather, the exception applies, and immunity therefore attaches, only "[w]here there is room for *policy* judgment and decision . . . ." *Dalehite v. United States*, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427, 1441 (1953) (emphasis added). Under the "planning-operational" test adopted by this court, and applied by the superior court, decisions that rise to the level of planning or policy formulation will be considered discretionary acts which are immune from tort liability, whereas decisions that are merely operational in nature, thereby implementing policy decisions, will not be considered discretionary and therefore will not be shielded from liability. *See, e. g., Carlson v. State*, 598 P.2d 969, 972 (Alaska 1979); *State v. Abbott*, 498 P.2d 712, 719–22 (Alaska 1972). In other words, the key distinction is between basic policy formulation, which is immune, and the execution or implementation of that basic policy, which is not immune. *State v. Abbott*, 498 P.2d 712, 722 (Alaska 1972). *See* Restatement (Second) of Torts § 895B (1979).

1. AS 09.50.250 provides in part:

A person or corporation having a . . . tort claim against the state may bring an action against the state in the superior court. . . . However, no action may be brought under this section if the claim . . . is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused . . . .

As we have repeatedly stated, "liability is the rule, immunity the exception." *Adams v. State*, 555 P.2d 235, 244 (Alaska 1976).

Of our previous cases interpreting the discretionary function exception, *State v. I'Anson*, 529 P.2d 188 (Alaska 1974), provides facts most analogous to the present case.[2] In *I'Anson* we held that the state could be held negligent in failing to post a road warning sign in advance of the entrance of a side road and in failing to place no-passing striping on a rise in the road. In so holding we noted that these items could be characterized as design questions, and we noted that the state argued that all "design" decisions were exempted under the "planning" discretionary exclusion. *Id.* at 192 n.11. Nevertheless, we found that the state decision on signing and striping the road did "not involve broad basic policy decisions which come within the 'planning' category of decisions which are expressly entrusted to a coordinate branch of government." *Id.* at 193–94. In addition, we noted that we were "further persuaded that resolution of questions such as whether or not the state properly striped or marked a portion of highway as it relates to the state's duty of care to users of the highway presents facts that courts are equipped to evaluate within traditional judicial fact-finding and decision-making processes." *Id.* at 194 (footnote omitted).

Other jurisdictions have also held that design defects in highway construction are not immune from state liability under the discretionary function exception. A leading case so holding is *Breed v. Shaner*, 57 Haw. 656, 562 P.2d 436 (1977). In that case the plaintiff alleged that a curve in the highway had been negligently designed by the state and was the proximate cause of her accident. The state sought to have the case dismissed based on the planning-operational test of the discretionary function exception. The state maintained that "any act or omission involving the design of a highway would always fall on the planning side of the dichotomy and thus be exempt from liability as discretionary." *Id.*, 562 P.2d at 441. The Hawaii court made clear that this broad definition of "planning" to include all "designing" was incorrect. Noting that the planning-operational nomenclature was not helpful, the court noted the primary factor behind the decision of what activities should be considered discretionary was whether the decision "involved the evaluation of broad policy factors." *Id.* at 442. The court then went on to explain that design decisions are subject to the same planning-operational dichotomy as other state activities. A design decision which does not require evaluation of broad policy factors does not come within the discretionary function exception. *Id.*

The Washington Supreme Court has reached a similar conclusion as to state liability for highway design. In *Stewart v. State*, 92 Wash.2d 285, 597 P.2d 101 (1979), the court was faced with an allegation of

---

2. We note that our case of *Jennings v. State*, 566 P.2d 1304 (Alaska 1977), is distinguishable from the present case. In *Jennings* we held that the discretionary function exception protected the state from negligence liability for failing to construct a crosswalk or take other safety measures to protect student pedestrians at an intersection near an elementary school. In arriving at that conclusion, we were careful to note that if the state had made the planning level decision to designate the area as "a school zone and then negligently signed the area or negligently constructed a crosswalk, a cause of action might have arisen against the state for these operational level acts." *Id.* at 1312 n.30. In other words, the state had not undertaken the duty of providing safety measures to protect students crossing the state highway at that intersection; if it had undertaken that duty, it would have been liable for any negligence in design, construction, or maintenance of such pedestrian safety devices.

In the present case, the state undertook the task of providing the traveling public with a taxiway designed for use by wide-body jets. In so doing it also assumed the responsibility of designing, constructing, and maintaining the taxiway safely. Once the state made the decision to build the taxiway, the discretionary function exception did not protect it from possible negligence liability in the operational carrying out of the basic policy-planning decision to build the taxiway. *See also Urethane Specialties, Inc. v. City of Valdez*, 620 P.2d 683, 688 (Alaska 1980); *Carlson v. State*, 598 P.2d 969, 973 (Alaska 1979); *Wallace v. State*, 557 P.2d 1120, 1124 (Alaska 1976); *State v. Stanley*, 506 P.2d 1284, 1291 (Alaska 1973).

the state's negligent design of a highway bridge. Noting that immunity for discretionary activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions of coordinate branches of government, the court held that the design of the highway did not necessarily involve basic governmental policy. *Id.*, 597 P.2d at 106. The court went on to state:

> The decisions to build the freeway, to place it in this particular location so as to necessitate crossing the river, the number of lanes—these elements involve a basic governmental policy, program or objective. However, these are not the elements which are challenged by appellant. Rather, appellant argues that once those governmental decisions were made they had to be carried out without negligent design of the bridge or of the lighting system. Negligent design was not essential to the accomplishment of the policy, program or objective.

*Id.*

In *Andrus v. State*, 541 P.2d 1117 (Utah 1975), in an action where the plaintiff sued the state claiming that the highway was negligently designed so that it caused flooding, the Utah Supreme Court similarly concluded: "The decision to build the highway and specifying its general location were discretionary functions, but the preparing of plans and specifications and the supervision of the manner in which the work was carried out cannot be labeled discretionary functions." *Id.* at 1120. *Accord, e. g., Indiana State Highway Comm'n v. Clark*, 371 N.E.2d 1323, 1327–28 (Ind.App.1978); *Lewis v. State*, 256 N.W.2d 181, 195 (Iowa 1977); *Jones v. State Highway Comm'n*, 557 S.W.2d 225, 226–27, 230 (Mo.1977); *State v.*

*Webster*, 88 Nev. 690, 504 P.2d 1316, 1319 (1972). *See also* Annot., *Governmental Liability—Design of Highway*, 45 A.L.R.3d 875 (1972).

■ In summary, the state may be held liable for injuries which result from negligent designs. The issue, as always, is whether the design decision in question involved a basic policy formulation which, under separation of powers concepts, should be immune to judicial review in a tort action, or whether the design decision at issue was merely part of the implementation or execution of a basic policy decision, and therefore not immune.

■ In the present case, the design decisions made in the taxiway plans by the state's engineers were operational decisions which merely implemented the basic policy formulation decision to build a taxiway suitable for use by wide-body jets such as the Boeing 747. Once the basic policy decision to build such a taxiway at Anchorage International Airport was made, the state was obligated to use due care to make certain that the taxiway met the standard of reasonable safety for its users.

The superior court's partial summary judgment order is REVERSED insofar as it is inconsistent with this opinion and the case is REMANDED for further proceedings.

COMPTON, J., not participating.