EARTH MOVERS OF FAIRBANKS, INC., an Alaska corporation, Appellant/Cross-Appellee,

v.

STATE of Alaska and Alaska State Trooper Buddy Harrel, Appellees/Cross-Appellants.

Nos. 7651, 7766.

Supreme Court of Alaska.

Nov. 16, 1984.

Joseph L. Paskvan, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellant/cross-appellee.

Linda L. Walton, Asst. Atty. Gen., Fairbanks and Norman C. Gorsuch, Atty. Gen., Juneau, for appellees/cross-appellants.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MOORE, Justice.

I. INTRODUCTION

This appeal and cross-appeal arise from a suit filed by Earth Movers of Fairbanks (hereinafter "EM"), appellant and cross-ap-

pellee, against Alaska State Trooper Buddy Harrel and the State of Alaska. In its appeal EM claims that it is the prevailing party and seeks attorney's fees and costs denied by the trial court. In its cross-appeal the State asserts that the trial judge made many errors, including the failure to grant summary judgment in favor of the State on the basis of immunity from suit under AS 09.50.250(1).

## II. FACTS

During the summer of 1979 EM was making improvements on the Chena Hot Springs Road near Fairbanks, pursuant to a contract with the State. The state troopers had received complaints from citizens that EM's truck drivers were driving too fast on the torn-up road, stirring up excessive dust and causing rocks to hit the windshields of other drivers. In early August Trooper Harrel was assigned by his supervisor to examine the situation; he observed that EM's trucks were going about 5–10 mph faster than most other private vehicles and were throwing dust and rocks up behind them.

Harrel then advised EM's foreman that, for safety reasons, he was going to lower the speed limit from 55 mph to 35 mph for part of the road for the remainder of the project. In his affidavit Trooper Harrel stated that he thought that certain regulations authorized him to temporarily reduce speed limits in response to road hazards and that the Department of Public Safety had previously allowed such temporary reductions.

On August 3 Harrel set up radar and ticketed an EM driver for exceeding 35 mph (at a speed of 47 mph). Trooper Harrel had not posted any signs regarding the reduced speed limit.

David Boyer, an employee of the Department of Transportation and an expert witness for the State, stated that after speaking with Harrel, he spoke with a construction engineer and a traffic engineer about reducing the speed limit, but a decision to reduce the speed limit was never made. Mr. Boyer speculated that the regular speed limit was retained because the construction job was almost completed.

EM filed a complaint in April 1980. In the first cause of action EM alleged that Trooper Harrel's negligent actions caused EM to suffer delay damages in excess of $32,140; EM claims that a 36% speed reduction affected all of its drivers for 14 days (or 40% of the length of the project). Count one specifically charged that Harrel's negligence in citing an EM employee for speeding, and his negligence in telling EM's foreman that he was lowering the speed limit to 35 mph, caused EM drivers not to exceed 35 mph, which then resulted in increased turnaround time.

In the second cause of action EM alleged that hauled materials were weighed according to an incorrect formula negligently suggested by Harrel, that EM trucks thus carried unnecessarily light loads, and that EM thereby incurred damages, including added costs of up to $32,140.

The State moved for summary judgment on the first cause of action on several grounds, including immunity from suit because State Trooper Harrel's decision to reduce the speed limit was discretionary. The State also sought summary judgment on the second cause of action on the ground that EM had provided no factual basis to support it. The trial court denied summary judgment on the first cause of action but granted summary judgment on the second cause of action.

The jury returned a verdict for EM, but for only $3,937.50 of the requested $31,500.

EM moved for attorney's fees of $16,982.75 and later filed a bill of costs. The State also moved for attorney's fees and costs. The trial court stated that neither party had prevailed and denied attorney's fees and costs to both parties.

## III. GOVERNMENTAL IMMUNITY UNDER AS 09.50.250(1)

We need not determine whether EM was the prevailing party because we conclude that the trial court erred in not granting summary judgment for the State and

Trooper Harrel on the ground that they were immune from suit under AS 09.50.-250(1).

The State and Trooper Harrel argue that if Harrel lacked authority to temporarily reduce the speed limit, his decision to do so is immune from suit under AS 09.50.250(1) because the statute encompasses situations in which a state official misinterprets the law in good faith. The State further argues that Harrel did exercise due care in executing 13 AAC 02.275 because there was an existing hazard and because, in the past, troopers have temporarily reduced speed limits due to hazards. EM argues that AS 09.50.250(1) does not apply because the trooper's decision was not discretionary; rather it was an operational decision requiring a planning level operational test.

AS 09.50.250(1) provides that:

A person or corporation having a . . . tort claim against the state may bring an action against the state in the superior court . . . . However, no action may be brought under this section if the claim

(1) is an action for tort, and is based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not the statute or regulation is valid; or is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused; . . .

■ Trooper Harrel did have the authority to ticket drivers for exceeding a reasonable speed based on the road conditions.[1] However, if he went beyond his authority when he stated that he was reducing the speed limit, his action would be subject to the discretionary function exception embodied in AS 09.50.250(1).[2]

We have stated that governmental immunity applies to situations in which a state official misinterprets the law. In *Bridges v. Alaska Housing Authority*, 375 P.2d 696 (Alaska 1962), plaintiff sued the Housing Authority and its officers. The officers had incorrectly thought that the Housing Authority had the power to use declaration of taking when it decided to destroy plaintiff's building. However, it had only the power of eminent domain. *Id.* at 698. On the officers' immunity from personal liability, we stated that:

the assistance of the department, or a municipality, in their respective jurisdictions and consistent with AS 28.01.010, determines upon the basis of an engineering and traffic investigation that a maximum speed prescribed in sec. 275(b) of this chapter is greater or lesser than is reasonable or safe under the conditions found to exist at an intersection, or an arterial street, or at any other place or part of the state or municipal highway system, the respective authority may determine a reasonable and safe maximum limit at the location. The maximum speed limit is effective when signs giving notice of the maximum limit are erected.

---

1. 13 AAC 02.275 provides that:
   BASIC RULE AND MAXIMUM LIMITS. (a) No person may drive a vehicle at a speed greater than is reasonable and prudent considering the traffic, roadway, and weather conditions.
   (b) Except when a special hazard exists that requires a lower speed for compliance with (a) of this section, the limits specified in this subsection are the maximum lawful speeds throughout the state, and no person may drive a vehicle at a speed in excess of these maximum limits, unless otherwise posted:
   (1) 15 miles per hour in an alley;
   (2) 20 miles per hour in a business district;
   (3) 25 miles per hour in a residential district; or
   (4) 55 miles per hour on any other roadway.

   .    .    .    .    .
   (e) The maximum speed limits set forth in (b) of this section may be altered as authorized in sec. 280 of this chapter.
   13 AAC 02.280 provides that:
   ALTERATION OF LIMITS BY STATE AND MUNICIPALITIES. (a) When the Department of Transportation and Public Facilities with

2. Trooper Harrel did have authority to determine that any speed over 35 mph violated the basic rule expressed in 13 AAC 02.275(a) [footnote 1 supra], given the existing special hazards. It is also quite appropriate for the trooper to publish such a determination. Harrel's announcement that he was reducing the speed limit can be considered to be such an act. Viewed in this light, he did not exceed or misinterpret his legal authority. This is an alternative rationale requiring reversal.

The Alaska Housing Authority is a public corporate authority created for the purpose of undertaking slum clearance and providing low cost housing projects. Because it exists and functions only for the purpose of serving a public need, its officers, Gebhart and Gagnon, fall within the classification of public officers. In this capacity, and within the scope of their official duties, they exercised their discretionary power in causing appellant's land to be taken and her buildings to be destroyed. They are immune from civil liability for this action under the well recognized rule that affords such protection to a public officer, acting within the scope of his official duties, for damages *caused by a mistake by him in the exercise of judgment or discretion, or because of an erroneous interpretation and application of the law.* The trial court committed no error in holding these appellees immune from suit.

*Id.* at 702 (emphasis added; footnotes omitted). We echoed this same statement in *State v. Stanley,* 506 P.2d 1284, 1292 (Alaska 1973).

■ We agree with the discussion in Prosser on Torts § 132, at 991 (4th ed. 1971), which states that an official's good faith determination of his authority is a discretionary decision.

Matters are further complicated by an additional distinction, which holds that all officers ... are liable if they act wholly outside of their jurisdiction or official authority, even where the act is a discretionary one. The officer is then regarded as not acting in the capacity of an officer at all. This has led to a further refinement, distinguishing acts which are merely *"in excess"* of the jurisdiction or authority—meaning that they are within the scope of the general subject-matter over which the officer has power, although he is without jurisdiction in the particular case. As to such acts there is immunity. But such a conception that "nonexistence can be less than nonexistence" is certainly a fiction, and *the public duty of any officer necessarily involves the determination of the facts which do or do not give him jurisdiction or authority, which is obviously a judicial or discretionary function.* The injury to the plaintiff, or the hardship upon an officer who has honestly believed that he was acting properly, is the same in either case.

(Emphasis added; footnotes omitted).

■ In this case, Trooper Harrel acted pursuant to his official duties. As employees of the Department of Public Safety, state troopers are charged with protecting life and property; that responsibility includes road safety. AS 44.41.020. Harrel had statutory authority to ticket drivers exceeding a reasonable speed. He was acting within the scope of his duties when he attempted to alleviate the hazardous conditions by reducing the speed limit. If Harrel exceeded his authority, his mistake falls within the discretionary function exception, and both he and the State are immune from liability.

REVERSED.

RABINOWITZ and COMPTON, Justices, concurring.

I write separately to emphasize two points which I believe are implicit in today's opinion.

The first is that lowering speed limits, whether this is done by an agency pursuant to 13 AAC 02.280 or by a State Trooper as part of enforcing the basic speed rule set out in 13 AAC 02.275(a), is a discretionary function under the immunity statute. Each decision of this sort is likely to depend on specific facts which call for a responsible official's intelligent judgment. Unlike decisions on how to build airport taxiways, *Japan Air Lines Co., Ltd. v. State,* 628 P.2d 934 (Alaska 1981), or decisions on how roadway stripes should be placed, *State v. I'Anson,* 529 P.2d 188 (Alaska 1974), decisions on whether safety problems require speed limits to be lowered cannot even in theory be reduced to a set of specifications. They depend on discretion, and the court holds today that the State is not liable even if one of its officers reduces speed limits in

a way a factfinder might later term negligent.[1]

Nor can Trooper Harrel himself be held liable, even if his decision was negligent. If he made a mistake, it was a "mistake in judgment or discretion." *State v. Stanley,* 506 P.2d 1284, 1292 (Alaska 1973). We said in *Stanley* that State employees are immune, under the common law, for mistaken "discretionary judgment-policy decisions." *Id.* Comparing *Stanley's* facts with the facts now before us is instructive. The plaintiff in *Stanley* alleged that a State employee, temporarily responsible for the plaintiff's boat, failed to check its valves and pumps, inspect the bilges, or instruct the people aboard about what to do if the vessel began to take on water. The boat then sank. We held that common-law immunity did not protect the State employee from a lawsuit based on these allegations. Here, in contrast, Trooper Harrel was not confronted with a simple set of tasks to perform. He had complaints to investigate, a highway to examine, and a difficult judgment call to make. Holding Trooper Harrel personally liable for a mistaken judgment would be inconsistent with *Stanley.*[2]

1. It is noteworthy that in its briefing Earth Movers has not suggested any standards against which one might judge Trooper Harrel's decision.

2. I do not mean to imply that the common-law immunity *Stanley* discussed is always co-extensive with the State's "discretionary function" immunity, set out in AS 09.50.250(1). In my view common-law individual immunity should sometimes be broader. *See, e.g., Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (municipalities may be liable under 42 U.S.C. § 1983 even when municipal employees are personally immune).