944 P.2d 453 (1997)
STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES of the State of Alaska; Alaska International Airport System; Anchorage International Airport, Petitioners,
v.
Adrian SANDERS; Andre Corentez Martin, a minor, by and through his father, Adrian Sanders; and United Airlines, Inc., Respondents.
No. S-7825.
Supreme Court of Alaska.
August 22, 1997.
*454 Michael C. Geraghty and Harland H. McElhany, DeLisio, Moran, Geraghty & Zobel, Anchorage, for Petitioners.
Phillip Paul Weidner and Michael Cohn, Weidner & Associates, Anchorage, for Respondents Sanders and Martin. Robert B. Baker and William F. Brattain II, Baker, Brattain & Huguelet, Anchorage, for Respondent United Airlines, Inc.
Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

OPINION
FABE, Justice.

I. INTRODUCTION

The issue in this petition for review is whether sovereign immunity shields the State of Alaska from liability for adopting a practice of allowing aircraft support vehicles to use Old International Airport Road (OIA Road), a public road near the operations area at Anchorage International Airport. Respondent Adrian Sanders asserted that the State's practice contributed to a collision between the motorcycle that he was operating and a baggage transport vehicle operated by respondent United Airlines because the baggage vehicle did not meet applicable vehicle *455 safety regulations. The superior court concluded that the State was not immune and granted summary judgment in favor of Sanders on the issue of the State's liability. We granted the State's petition to review this ruling and conclude that the State is immune from liability for its decision to allow vehicles that do not comply with applicable safety regulations to operate on OIA Road. However, the State may be liable if it allowed such vehicles to use OIA Road without taking reasonable steps to minimize the risk such vehicles create. Therefore, we reverse and remand.

II. FACTS AND PROCEEDINGS

A. The Accident

While riding a motorcycle on OIA Road during the early morning hours of July 2, 1992, Adrian Sanders struck the rear of a baggage train consisting of a baggage tug and five baggage carts. Sanders suffered serious injuries. The baggage train Sanders struck was being operated by United Airlines (United). According to the police report, the United employee who was driving the baggage train stated that he was traveling approximately ten miles per hour at the time of the accident.

B. The Underlying Law Suit

Sanders filed suit against the State, United, several employees of United and the State, and Dynair, the owner of the tug that United was using to pull the baggage cars. Sanders claimed that he was unable to see and avoid the baggage train because it was traveling at a slow rate of speed, weaving across both lanes of traffic, and operating without adequate lighting or warning devices. He alleged that the State, which owns and operates the Airport,[1] was liable because the Airport had adopted a practice of allowing aircraft support vehicles, including baggage trains, to operate on OIA Road without complying with certain motor vehicle regulations promulgated by the Department of Public Safety.

C. Airport Design and Operations

OIA Road is a public road that runs eastwest. The Airport operations area is located on the south side of the road and surrounded by a fence to control public access. United and other Airport-related businesses lease land from the Airport on the north side of the road. When Sanders collided with the United baggage train, it was traveling on the road toward a controlled gate that provides access to the operations area.
Alaska Statute 28.05.011(1) authorizes the Commissioner of Public Safety to promulgate rules governing the operation of vehicles on public roads. Some of these rules are contained in 13 Alaska Administrative Code (AAC) 04.010 et seq. and require various safety devices such as adequate lighting. One of the regulations governing operation of vehicles within Airport jurisdiction provides:
All vehicles shall be operated in accordance with the general rules prescribed by the airport manager, and with the applicable provisions of AS 28 and 13 AAC and shall be subject to the penalties contained therein insofar as these laws and regulations apply to operations on the airport.
17 AAC 40.030(a)(1). Another relevant regulation provides that "[a]ll regulations included in secs. 10-70 of this chapter may be enforced by commissioner [of the Department of Transportation and Public Facilities], by persons to whom he has designated enforcement powers, and by other authorized officers." 17 AAC 40.060(a).
The State agrees that "cargo tugs and trailers of the type involved in the Sanders accident, are not and cannot be made street legal." Nevertheless, the parties agree that it was common for Airport-related businesses to operate "non-street legal" aircraft support vehicles on OIA Road in order to access the Airport operations area.
The record suggests that Airport safety officials were warned of the danger created by allowing aircraft support vehicles to operate *456 on OIA Road. However, these officials apparently followed a practice of advising Airport public safety officers not to cite employees of Airport-related business for violating licensing and lighting regulations on OIA Road. Indeed, record evidence suggests that when Airport public safety officers enforced these vehicle regulations, the citations were dismissed, and the officers were informed that employees of Airport-related tenants should not be ticketed.

D. Proceedings

On October 5, 1995, Sanders moved for summary judgment against the State on the issue of liability. The State filed a cross-motion for summary judgment claiming that it was entitled to discretionary function immunity under AS 09.50.250. The superior court held:
Once the State assumed the duty to operate the Anchorage International Airport, it was obligated to do so non-negligently. Here, the State established a policy allowing certain unlicensed, inadequately lighted airport vehicles to travel on Old International Airport Road. This policy amounts to a breach of the State's duty to operate the airport safely.
Therefore, the superior court granted Sanders's motion for summary judgment and denied the State's cross-motion. We granted the State's petition for review of the superior court's decision that the State was not entitled to discretionary immunity under AS 09.50.250.

III. DISCUSSION

A. Standard of Review

"Summary judgment will be affirmed if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law." Great Am. Ins. Co. v. Bar Club, Inc., 921 P.2d 626, 627 (Alaska 1996). In reviewing questions of law, we apply our independent judgment and adopt the rule of law that is most persuasive in light of precedent, reason, and policy. Id.

B. The Trial Court Erred in Concluding that the State is Not Entitled to Discretionary Function Immunity.

Alaska Statute 09.50.250 provides in part:
A person or corporation having a ... tort claim against the state may bring an action against the state.... However, an action may not be brought under this section if the claim
(1) is an action for tort ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused[.]
In State v. Abbott, 498 P.2d 712, 720 (Alaska 1972), we recognized that the term "discretionary" in AS 09.50.250 should not be interpreted broadly to encompass all state actions involving discretion. Otherwise, there would be almost no limit to the State's immunity because "almost any act, even driving a nail, involves some `discretion.'" Id. (quoting Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 245, 447 P.2d 352, 357 (1968)).
Instead, we identify "discretionary" acts or functions by examining whether the act or function can be described as "planning" or "operational." Abbott, 498 P.2d at 720-22. A planning decision is one that involves policy formulation. In contrast, an operational decision involves policy execution or implementation. Id. Only acts or functions occurring at the planning level are entitled to immunity as discretionary functions under AS 09.50.250. Id.
Under the planning/operational test, "liability is the rule, immunity the exception." Johnson v. State, 636 P.2d 47, 64 (Alaska 1981). The test focuses on the policy behind the discretionary immunity doctrine for guidance in determining whether a given act should receive immunity. State v. I'Anson, 529 P.2d 188, 193 (Alaska 1974). "The policy underlying immunity is the necessity for `judicial abstention in certain policy-making areas that have been committed to other branches of government.'" Johnson, 636 P.2d at 64 (quoting Carlson v. State, 598 P.2d 969, 972 (Alaska 1979)). "This policy in turn is based upon notions of separation of powers, *457 and limitations on this court's ability to reexamine the questioned decision and the considerations that entered into it." Id.; accord Industrial Indem. Co. v. State, 669 P.2d 561, 563 (Alaska 1983) ("[C]ourts must not intrude into realms of policy exceeding their institutional competence.").

1. Airport officials did not have a mandatory duty to enforce traffic regulations on OIA Road.

United and Sanders both assert that the State is not entitled to discretionary function immunity because Airport officials had a mandatory duty to enforce traffic regulations on OIA Road. We disagree.
We have relied upon federal cases interpreting the Federal Tort Claims Act when examining the discretionary function exception in AS 09.50.250(1).[2] In interpreting the Federal Tort Claims Act, the United States Supreme Court has held that when a statute, regulation, or policy specifically prescribes a course of conduct, the discretionary function immunity exception does not apply. Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). This is because an act or function can be "discretionary" only if it "involves an element of judgment or choice." Id.
Alaska Statute 28.05.011(1) requires the commissioner of the Department of Public Safety to adopt regulations governing the "conduct of vehicles" on public roads. Pursuant to this authority, the commissioner promulgated regulations that require vehicles to have various kinds of lights. See 13 AAC 04.010 et seq. Another statute, AS 02.15.060, authorizes the Department of Transportation and Public Facilities to operate and regulate "airports" within the state.[3] The Department of Transportation and Public Facilities, in turn, has promulgated two regulations that are relevant to this case. First, 17 AAC 40.030(a)(1) provides:
All vehicles shall be operated in accordance with the general rules prescribed by the airport manager, and with the applicable provisions of AS 28 and 13 AAC and shall be subject to the penalties contained therein insofar as these laws and regulations apply to operations on the airport.
Second, and most significantly, 17 AAC 40.060 provides in part:
(a) All regulations included in secs. 10  70 of this chapter may be enforced by the commissioner [of the Department of Transportation and Public Facilities], by persons to whom he has designated enforcement powers, and by other authorized officers.
(b) Persons violating the regulations in secs. 10  70 of this chapter may be charged under applicable statutes.
17 AAC 40.060(a)-(b) (emphasis added).
We agree with the State that the use of "may" in 17 AAC 40.060 indicates that Airport officials had discretion to decide whether to enforce vehicle regulations on OIA Road. See Posey v. State, 180 Cal. App.3d 836, 225 Cal. Rptr. 830, 839 (1986) ("The meaning of the word `may' in the statute.... affords the [police] officer ... permissive authority, not an obligatory duty...."); City of Indianapolis v. Constant, 498 N.E.2d 1308, 1310 (Ind. App. 1986) (noting that the repeated use of "may" in a statute granting regulatory power indicates discretion).[4]
*458 Contrary to Sanders's argument, Wallace v. State, 557 P.2d 1120 (Alaska 1976), does not contradict this conclusion. In that case, statutes provided that the Department of Labor "may" enforce labor laws and "may" inspect work sites. Wallace, 557 P.2d at 1123 n. 7 & 8. We did not conclude that these statutes imposed a mandatory duty to enforce labor laws and inspect work sites. In fact, we noted that "the decision to inspect a site is a discretionary act." Id. at 1124. The holding of Wallace is that once the department decided to inspect, it was under a duty to perform the inspection non-negligently. Id. Thus, Wallace does not require us to conclude that the State had a mandatory duty to enforce traffic regulations on OIA Road.

2. The discretionary function exception was designed to shield decisions like the determination to allow aircraft support vehicles to use OIA Road without complying with applicable vehicle safety regulations.

Having concluded that the Airport officials did not have a mandatory duty to enforce traffic regulations on OIA Road, we next consider whether the discretionary function exception was designed to shield decisions like the one to allow "non-street legal" aircraft support vehicles to use OIA Road. The State argues that its practice of allowing such vehicles to use OIA Road was a planning level decision aimed at facilitating access to the Airport operations area for Airport tenants like United who occupy spaces on the north side of OIA Road. United and Sanders maintain that under Japan Air Lines Co. v. State, 628 P.2d 934 (Alaska 1981), and State v. Abbott, 498 P.2d 712 (Alaska 1972), once the State decided to design, build, and operate the Airport, it was obligated to implement that decision with due care.
We agree with United and Sanders that Abbott is most analogous to the case before us. In Abbott, Brenda Vogt brought an action for damages against the state after she lost control of her automobile while attempting to negotiate a curve on the Seward Highway. Abbott, 498 P.2d at 715. She alleged that the state was "negligent in its design, construction and maintenance of the road and in failing to post signs warning of the hazardous condition of the curve." Id. Applying the planning/operational test, we concluded:
Although it is true, as the state contends, that the district engineer's decision as to how many men and how much equipment were necessary to maintain this particular stretch of highway involved a certain amount of planning and discretion, it is not the kind of broad policy decision at which the exception ... is aimed. Once the initial policy determination is made to maintain the highway through the winter by salting, sanding and plowing it, the individual district engineer's decisions as to how that decision should be carried out in terms of men and machinery is made at the operational level.... Once the basic decision to maintain the highway in a safe condition throughout the winter is reached, the state should not be given discretion to do so negligently.
Id. at 722.
In this case, the State's practice of not enforcing vehicle safety regulations against aircraft support vehicles is essentially a decision to open OIA Road to aircraft support vehicles that do not comply with applicable vehicle safety regulations. This policy is analogous to the state's planning decision in Abbott to maintain the Seward Highway through the winter. As discussed in Part III.B.1, the governing regulation gave Airport officials discretion to enforce vehicle safety regulations. Thus, many different policy factors such as Airport security, convenience to Airport tenants, and allocation of limited Airport resources permissibly could have influenced the decision to facilitate access to the operations area by opening OIA Road to aircraft support vehicles.[5] Because *459 the governing regulation provides no standards that a court might use to analyze the non-enforcement decision, the non-enforcement decision is protected by the discretionary function exception in AS 09.50.250(1).
Although the State's decision to allow aircraft support vehicles to use OIA Road was within the discretionary function exception, the State still may be subject to liability for failure to take reasonable measures to minimize the risk created by aircraft support vehicles on OIA Road. As in Abbott, once Airport officials reached the discretionary decision to allow aircraft support vehicles to use OIA Road, they did not have discretion to do so negligently. See Abbott, 498 P.2d at 722. That is, the discretionary function exception protects the planning decision to allow aircraft support vehicles to use OIA Road, but it does not protect the manner in which Airport officials implement that decision. In this case, if those officials did not take reasonable steps[6] to implement the planning decision in a non-negligent manner, the State may be liable.[7]
Contrary to the State's arguments, our conclusion is not inconsistent with Earth Movers v. State, 691 P.2d 281 (Alaska 1984), or Estate of Arrowwood v. State, 894 P.2d 642 (Alaska 1995). In Earth Movers, a state trooper interpreted a regulation to give him authority to temporarily reduce the speed limit on a particular stretch of road in response to road hazards. Earth Movers, 691 P.2d at 282. Pursuant to this perceived authority, the trooper reduced the speed limit on a road leading up to a construction site. Id. A construction company alleged that the trooper's reduction in the speed limit negligently caused it to incur delay damages. Id. We concluded:
[The trooper] did have the authority to ticket drivers for exceeding a reasonable speed based on the road conditions. However, if he went beyond his authority when he stated that he was reducing the speed limit, his action would be subject to the discretionary function exception embodied in AS 09.50.250(1).
Id. at 283.
Our decision in Earth Movers does not control this case. In Earth Movers, the contractor did not contend that the trooper implemented a discretionary policy in a negligent manner. Instead, the contractor argued that the trooper negligently concluded that applicable regulations authorized him to reduce the speed limit. See id. at 282. In contrast, the issue in this case is whether the State can be liable for negligently implementing the discretionary non-enforcement policy.
Estate of Arrowwood also is consistent with our conclusion. In that case, the Arrowwoods contended that the state negligently failed to close the Parks Highway. 894 P.2d at 644. We noted that "relevant statutory and administrative code provisions do not require officials to act to carry out a predetermined policy" when evaluating whether to close a highway. Id. at 645. Instead, we recognized that "the language of these provisions delegates to officials on the scene the authority to act if their evaluation of road conditions leads them to conclude that such action is necessary." Id. Thus, we held that the decision not to close the highway was within the discretionary function exception. Id. at 646.
*460 The decision not to close the Parks Highway in Arrowwood is analogous to the Airport officials' decision to allow aircraft support vehicles on OIA Road. Thus, Arrowwood supports our conclusion that the non-enforcement decision was discretionary. However, this case involves an issue Arrowwood did not: whether the State negligently implemented its discretionary decision. Therefore, Arrowwood is not dispositive.

IV. CONCLUSION

We conclude that the State is immune from liability for its decision to allow aircraft support vehicles to operate on OIA Road. That decision is protected by AS 09.50.250(1). However, once the State decided to open the road to such vehicles, it was obligated to do so in a non-negligent manner. We REVERSE and REMAND for further proceedings consistent with this opinion.
NOTES
[1] The Airport is operated by the Alaska Department of Transportation and Public Facilities, which is vested with authority to "plan, establish, construct, enlarge, improve, maintain, equip, operate, regulate, protect, and police airports and air navigation facilities within the state." AS 02.15.060.
[2] "Because the critical statutory language of the discretionary function exception in AS 09.50.250(1) is identical to that contained in the Federal Tort Claims Act, reliance on federal court interpretation of the exception is appropriate." R.E. v. State, 878 P.2d 1341, 1349 n. 15 (Alaska 1994).
[3] AS 02.15.260(5) defines "airport" as "an area of land or water which is used or intended for use for the landing and take-off of aircraft, and any appurtenant areas which are used or intended for use for airport buildings or other airport facilities or rights-of-way, together with airport buildings and facilities located thereon[.]"
[4] Subsection (c) of 17 AAC 40.060 further suggests that "may" indicates discretion. That subsection provides that the airport manager "may" impound illegally parked vehicles and "may" assess an impound fee. 17 AAC 40.060(c)(1)(B) & (c)(2). In contrast, subsection (c) also states that "[a]ll impounded property which is not redeemed within 90 days after impoundment shall be considered abandoned and shall be subject to sale." 17 AAC 40.060(c)(3) (emphasis added). The use of "shall" and "may" within the same regulation indicates that "may" provides discretion while "shall" does not.
[5] "[S]ome jurisdictions require that a state or local governmental unit seeking to obtain the protection of discretionary function immunity show that a considered policy evaluation actually took place." 57 Am.Jur.2d Municipal, County, School, and State Tort Liability § 123 (1988). Alaska does not require such a showing. Industrial Indem. Co. v. State, 669 P.2d 561, 566 n. 11 (Alaska 1983) ("While we have remarked occasionally in the past upon the varied elements of policy weighed by the legislature in reaching a protected decision, we have done so only to illustrate the kinds of competing factors which lie behind determinations of policy, and to demonstrate that the courts are an inappropriate forum in which to re-evaluate those determinations.").
[6] Such steps might include appropriate warning lights or signals, road signs, reduced speed limits, and controls on the number of aircraft support vehicles on OIA Road. We do not decide whether the State took reasonable steps to minimize the risk created by allowing aircraft support vehicles on OIA Road.
[7] Our decision in Japan Air Lines Co. v. State, 628 P.2d 934 (Alaska 1981), provides additional support for this result. In that case, we determined that the state's decision to build a taxiway at the Airport was a discretionary decision. However, "[o]nce the basic policy decision to build such a taxiway at [the Airport] was made, the state was obligated to use due care to make certain that the taxiway met the standard of reasonable safety for its users." Id. at 938. In that case, the taxiway did not meet federal aviation standards. Id. at 936.