*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LEO A. REGNER, | ) | |
| | ) | Supreme Court No. S-14794 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-10-03390 CI |
| v. | ) | |
| | ) | O P I N I O N |
| NORTH STAR VOLUNTEER FIRE | ) | |
| DEPARTMENT, INC.; JEFF | ) | No. 6891 – April 11, 2014 |
| TUCKER, "Fire Chief"; JERRY | ) | |
| HANSON, "Fire Commander" at the | ) | |
| scene; NORTH POLE FIRE | ) | |
| DEPARTMENT; BUDDY LANE, | ) | |
| "Fire Chief," | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Leo A. Regner, pro se, Fairbanks, Appellant. Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellees North Star Volunteer Fire Department, Jeff Tucker, and Jerry Hanson. Zane D. Wilson, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellees North Pole Fire Department and Buddy Lane.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.	INTRODUCTION

On December 31, 2008, a fire broke out at a mobile home owned by Leo Regner near North Pole. The North Star Volunteer Fire Department, the North Pole Fire Department, and the Fort Wainwright Fire Department responded to the fire but were unable to prevent damage to the mobile home. Regner sued the fire departments and several of their employees, alleging negligence. Regner voluntarily dismissed his claim against the Fort Wainwright Fire Department and its employee, and the remaining defendants (the "defendants")[1] moved for summary judgment on the basis that they were immune from suit. The superior court granted complete summary judgment on the grounds that: (1) the individual defendants were immune from suit; (2) the fire departments were immune from suit for their discretionary decisions; and (3) Regner failed to offer any evidence of negligence to rebut the defendants' "conclusive showing" that all firefighting activity was done in accordance with generally accepted firefighting practices.

Regner appeals only the superior court's decision that he failed to make a sufficient showing of negligence to defeat summary judgment. Because the defendants did not move for summary judgment on the merits of Regner's negligence claims and the merits of those claims were not otherwise addressed in the summary judgment proceedings, we reverse. Because Regner did not appeal the superior court's immunity decisions, we do not address the merits of those decisions, but we note that the superior court's discretionary function immunity decision did not address all of the allegedly

---

[1]	We refer to the appellee fire departments and fire department employees collectively as the "defendants" to avoid confusion when discussing the separate actions of individual fire department employees, individual fire departments, and the fire departments collectively.

negligent actions that the defendants argued were subject to immunity. These remaining claims are remanded for decision.

## II. FACTS AND PROCEEDINGS

This appeal concerns a mobile home fire that occurred on December 31, 2008, just outside of North Pole. On the afternoon of the fire, Leo Regner, the mobile home's owner, received a phone call from the tenant living in the home informing him that water was not coming out of her kitchen faucet. Regner determined that the water line had frozen in the -45°F temperature. The water line ran from a small adjacent well house to the underside of the mobile home. Regner went underneath the mobile home, removed the insulation, and used a small handheld propane torch to apply direct heat to the water line. When this proved unsuccessful, Regner and the tenant entered the well house, and Regner used the torch to heat the line from inside. Regner noticed that this process caused a black insulation board inside the well house to "glow[] a little" and smolder, so he scratched out the glowing spot with his finger until it was cool to the touch. The tenant informed Regner that she thought she smelled smoke, but Regner responded that he did not smell anything, and the tenant concluded she was simply noticing the smell of the torch. After successfully restoring water flow to the kitchen sink, the two left the residence and drove to Fairbanks to run errands.

At approximately 5:53 p.m. the North Star Volunteer Fire Department was dispatched to a reported structure fire at Regner's mobile home. Although Regner's property is outside of their jurisdictions, the North Pole Fire Department[2] and the Fort

---

[2] There is no legal entity known as the "North Pole Fire Department"; rather, the City of North Pole operates a fire department as part of its city operations. The superior court rejected North Pole's argument for summary judgment on the basis that it was incorrectly named, finding that the wording was "close enough" to provide "ample notice" of potential liability. North Pole does not challenge this finding on appeal. For
(continued...)

Wainwright Fire Department were also dispatched pursuant to mutual aid agreements with the North Star Volunteer Fire Department. The North Pole Fire Department was the first to arrive on the scene. The North Star Volunteer Fire Department arrived soon after and assumed command of the fire, with Deputy Chief Jerry Hanson serving as the officer in command.

The first firefighters to arrive on the scene, North Pole Fire Department Deputy Chief Geoffrey Coon and Captain David Daniell, were unaware whether the mobile home was occupied. Coon immediately observed "a single-wide trailer with a small addition" and "not a whole lot of smoke." Coon walked up to the front door and observed "a small amount of fire" between the mobile home and the well house. By removing his glove and feeling the front door, Coon determined there was a moderate amount of heat coming from inside the mobile home. Coon then opened the door and discovered smoke and heat.

Daniell led the firefighters in performing "an initial interior attack." Daniell and two other firefighters entered the mobile home with a pressurized hose while "crawling on [their] . . . knees and staying underneath the heat and smoke." The firefighters performed a "search pattern," which Daniell described as a typical procedure whereby a crew follows the walls of a building until they discover victims or fire. The crew followed the wall in a right-hand search pattern, entering the bedroom, then the living room, and then the bathroom, where they discovered the fire and "started fighting the fire in the hallway by the bathroom." Daniell testified that the majority of the fire was in the bathroom, and it took the crew "ten minutes or less from the time [they] arrived] on the scene" to get the fire under control. Daniell determined that fire from the

---

[2](...continued)
purposes of consistency this opinion refers to the "North Pole Fire Department" to describe the actions taken by the fire department.

well house spreading to the insulation underneath the mobile home had caused the bathroom fire, so he and his crew remained inside to access the insulation and the "hidden fires."

While Daniell and the crew fought the fire from inside the mobile home, other firefighters performed "outside firefighting functions," such as "assisting pulling [the fire hose] line so the guys [could] advance down the hallway, . . . pulling the second line, . . . trying to set up a positive pressure fan," and speaking to Regner. Coon prepared the pressure fan, performed a "walk-around" of the mobile home, and broke out the windows in order to create ventilation and to allow gas and smoke to exit the home. The outside firefighters did not apply water to the outside of the mobile home while the other firefighters were fighting the fire from inside; both Daniell and Coon explained that it is dangerous for water to be sprayed from outside when firefighters are inside a building. After the firefighters "attacked" the fire inside the mobile home, there was only "a very small fire [remaining outside and in the well house] that took less than 10 gallons to put out." Coon explained, "[W]e put the fire out from the inside of the trailer to the outside of the trailer and then finished up on the outside." The entire fire was extinguished at approximately 6:45 p.m., 52 minutes after the fire departments were dispatched to the property.

Regner learned about the fire when, driving back from Fairbanks, he received a phone call from a neighbor informing him that two fire trucks had just pulled up to the mobile home. He arrived at the property a few minutes later and saw two fire trucks and "a glowing fire with sparks between the well-house wall and exterior [m]obile [h]ome wall." Regner described initially observing a big glowing ball that was four to six inches in diameter that had not yet erupted into flames. Regner also stated that he saw at least one firefighter standing outside, one firefighter dragging a hose outside, and

a hose going inside the mobile home. Regner perceived that other firefighters had already entered the mobile home.

According to Regner, he immediately realized that his earlier attempt to scratch out the smoldering in the well house must have been unsuccessful, and he knew the fire originated in the well house. Regner got out of the car and ran over to firefighters standing near the well house to ask them to apply water to the well house, but the only hose outside was collapsed. When the firefighters did not respond, Regner entered the mobile home and "[h]oller[ed] at [the firefighters] to bring [the] pressurized hose outside," but it was too dark for Regner to see anything, and one of the firefighters pushed Regner out of the mobile home. When his further efforts to get firefighters to apply water to the well house proved unsuccessful, Regner decided to take matters into his own hands: he entered the well house "with the intent to [apply] water from the water pump" to the glowing spot, but he quickly discovered that the power had been shut off and the spigot was not producing water. Regner then exited the well house and jumped on top of the structure in an effort to kick snow from the roof of the well house onto the outside glowing spot — which, according to Regner, was flaming at this point. His efforts proved unsuccessful, and another firefighter approached him and asked him to leave the scene. Regner could not recall ever seeing flames or smoke inside of the well house.

After more unsuccessful requests that firefighters apply water outside, Regner again tried to enter the mobile home, but he was pushed outside by a firefighter wearing a breathing apparatus, and Regner was unable to see what the firefighters were doing inside. Regner's ears were getting cold at this point, so he walked next door to the neighbor's house to borrow a hat. Convinced something was "drastically wrong" with the firefighters' procedure, Regner asked the mobile home's tenant to accompany him to the scene of the fire to serve as a witness. Upon returning, Regner saw "four or five

foot flames above the well-house roof"; this was the only fire Regner ever witnessed. Regner again tried to enter the mobile home to ask the firefighters to bring the pressurized hose outside and apply water to the well house, but he was "pushed back outside." The firefighters instructed Regner to return in twenty minutes, at which point their operation would be complete.

Regner reluctantly left the scene for the second time and returned just as the last fire truck was leaving. Regner, the tenant, and fire commander Hanson surveyed the damage to the mobile home. The well house was completely intact except for the outer wall adjacent to the mobile home. A North Star Volunteer Fire Department incident report estimated the property damage at $10,500, though a contractor Regner hired estimated the repair costs at $145,000. Regner did not have insurance.

Regner wrote letters to and visited with members of the fire departments and various local political entities; he demanded an investigation and sought "to hold the Fire Department[s] accountable for their malicious behavior (rather criminal behavior)." Unsatisfied with the responses he received, Regner filed suit, pro se, against the North Star Volunteer Fire Department, the North Pole Fire Department, and the Fort Wainwright Fire Department, as well as four individuals employed by these departments. Regner asserted that the North Star Volunteer Fire Department and the North Pole Fire Department

> adamantly would not apply water to the glowing wall of the well house, and let it turn into a blaze, letting it burn for [30] to 45 minutes, until the flames melted the metal siding of the mobile home and entered the structure, totally destroying the bathroom, interior walls, appliances, furniture, curtains, windows, etc., all the renter['s] appliances, belongings and personal effects[,] etc.

Regner also implied that the three fire departments were involved in a conspiracy against him. Regner requested the defendants be ordered to repair or replace the damaged

property and to pay for "loss of rental income and the sum of $225,000.00, plus costs and interest for punitive damages, . . . for [Regner's] costs and stress incurred while conducting informal and formal investigations, . . . for [his] time as pro per attorney," and for future costs. Regner voluntarily dismissed his claims against the Fort Wainwright Fire Department and its employee. The remaining defendants moved for summary judgment on the grounds of immunity.

The superior court granted complete summary judgment to all of the defendants on April 30, 2012, and entered final judgment on June 4, 2012. The court concluded that the individual defendants were immune from suit pursuant to AS 09.65.070(c).[3] The court applied AS 09.65.070(d)(2)[4] to conclude that both fire departments were "municipalit[ies]" as defined by the statute and that both were immune

---

[3] AS 09.65.070(c) provides:

> An action may not be maintained against an employee or member of a fire department operated and maintained by a municipality or village if the claim is an action for tort or breach of a contractual duty and is based upon the act or omission of the employee or member of the fire department in the execution of a function for which the department is established.

[4] AS 09.65.070(d)(2) provides:

> An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim . . . is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused.

from suit for their discretionary acts, which the court found to include "the decision of how many fire departments would respond to the fire" and "the policy of using one fire department to 'cover' while another department fights a fire." Finally, the court ruled that all the defendants were entitled to summary judgment on the issue of negligence because Regner failed to offer "any evidence of negligence to rebut the defendants' conclusive showing that all firefighting activity was done in accordance with generally accepted firefighting practices."

Proceeding pro se, Regner appeals only the superior court's conclusion that he failed to make a sufficient showing of negligence to defeat summary judgment.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo, reading the record in the light most favorable to, and drawing all reasonable inferences in favor of, the non-moving party.[5] "We will affirm a grant of summary judgment if there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law."[6] "The moving party has the 'entire burden' of proving that it is entitled to summary judgment."[7]

---

[5] *Russell ex rel. J.N. v. Virg-In*, 258 P.3d 795, 801 (Alaska 2011) (citing *Schug v. Moore*, 233 P.3d 1114, 1116 (Alaska 2010)).

[6] *Smith v. State*, 282 P.3d 300, 303 (Alaska 2012) (quoting *Cragle v. Gray*, 206 P.3d 446, 449 (Alaska 2009)) (internal quotation marks omitted).

[7] *B.R. v. State, Dep't of Corr.*, 144 P.3d 431, 433 (Alaska 2006) (quoting *Barry v. Univ. of Alaska*, 85 P.3d 1022, 1025-26 (Alaska 2004)).

## IV. DISCUSSION

### A. The Superior Court Erred By Granting Summary Judgment On The Merits Of Regner's Negligence Claims.

In their motion for summary judgment, the defendants asserted only that Regner's claims failed because the individual firefighters were immune from suit and all of the decisions made and actions taken in the course of fighting the fire were subject to discretionary function immunity. Nevertheless, the superior court sua sponte addressed the issue of negligence and concluded that Regner offered "only unfounded speculation" in support of his negligence claims and that there was "no evidence that the defendants breached their duty or that they caused Regner any injury." Regner argues that the superior court erred by granting summary judgment in favor of the defendants on his negligence claims because there are genuine issues of material fact that can be decided only by trial. The defendants respond that the firefighting tactics employed in combating the fire were not negligent as a matter of law and, in any case, they were immune from Regner's claims.

In order to prove his negligence claims, Regner must show that: (1) the defendants owed him a duty of care, (2) the defendants breached this duty, (3) he was injured, and (4) his injury was the factual and proximate result of the defendants' breach.[8] But on a motion for summary judgment "the movant has the burden of showing that there is an absence of a factual dispute on a material fact and that this absence of a dispute constitutes a failure of proof on an essential element."[9] Because the defendants

---

[8]     *See Kelly v. Municipality of Anchorage*, 270 P.3d 801, 803 (Alaska 2012) ("In order to succeed on a negligence claim, a plaintiff must prove duty, breach of duty, causation, and harm." (citing *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996))).

[9]     *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007) (citations (continued...)

did not move for summary judgment on the merits of Regner's negligence claims, the defendants have obviously not met their burden. Equally obvious, because the defendants moved for summary judgment only on the basis of immunity, Regner was not put on notice that he needed to adduce facts, other than those relating to the applicability of the immunity statutes, in order to survive summary judgment.[10] Accordingly, because issues of negligence were not raised in the summary judgment motion, the superior court erred by granting summary judgment in favor of the defendants on the merits of Regner's negligence claims. We reverse the grant of summary judgment on Regner's negligence claims and remand for further proceedings.

## B. The Superior Court's Immunity Decisions Do Not Dispose Of All Of Regner's Claims.

The superior court granted immunity to each of the individually named defendants under AS 09.65.070(c), which protects fire department employees from tort claims arising from the execution of their duties. The court also granted discretionary function immunity to the fire departments under AS 09.65.070(d)(2) with regard to two specific decisions Regner challenged. Because Regner does not challenge the superior court's immunity decisions on appeal, we do not address the merits of these decisions. But the superior court's grant of discretionary function immunity did not dispose of all of Regner's claims against the fire departments. Thus, the superior court could not grant complete summary judgment on the basis of immunity. On remand, the court must

---

[9](...continued)
omitted).

[10]     *See B.R.*, 144 P.3d at 433 ("[U]nless the moving party points to undisputed facts or admissible evidence establishing a prima facie case entitling it to summary judgment as a matter of law, the opposing party has no obligation to produce evidence supporting its own position." (citation omitted)).

further consider the motion for summary judgment on immunity grounds in light of the fire departments' actions and decisions that Regner challenges.[11]

Alaska Statute 09.65.070(d)(2) immunizes municipalities and their agents, officers, and employees from civil liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." In determining which municipal decisions qualify as "discretionary functions" protected from suit, we have consistently distinguished between planning decisions and operational decisions.[12] A planning decision "involves policy formulation" and is protected from liability, whereas an operational decision "involves policy execution or implementation" and is not entitled to immunity.[13] Thus, the "*decision to engage* in an activity is an immune 'planning' decision, while *the decisions undertaken in implementing* the activity are operational, as

---

[11]    *Cf. id.* at 437 n.31 (discussing superior court's obligation to independently examine the record before concluding that movant is entitled to complete summary judgment).

[12]    *See, e.g.*, *Pauley v. Anchorage Sch. Dist.*, 31 P.3d 1284, 1285 (Alaska 2001) (defining discretionary actions as "those that require personal deliberation, decision and judgment" (citations and internal quotation marks omitted)); *City of Seward v. Afognak Logging*, 31 P.3d 780, 786 (Alaska 2001) (citing *Adams v. City of Tenakee Springs*, 963 P.2d 1047, 1050 & n.3 (Alaska 1998)); *State, Dep't of Transp. & Pub. Facilities v. Sanders*, 944 P.2d 453, 456 (Alaska 1997) (noting that we identify those actions entitled to immunity "by examining whether the act or function can be described as 'planning' or 'operational' " (quoting *State v. Abbott*, 498 P.2d 712, 720-22 (Alaska 1972))).

[13]    *Kiokun v. State, Dept. of Pub. Safety*, 74 P.3d 209, 215 (Alaska 2003) (citing *Sanders*, 944 P.2d at 456); *see Afognak Logging*, 31 P.3d at 786 ("Discretionary function immunity precludes liability for harm caused by the type of planning decisions that involve policy formulation. In contrast, operational decisions — those made while executing or implementing existing policies — are not immune." (internal citations omitted)).

long as the implementation does not involve the consideration of policy factors."[14] "Under the planning/operational test, 'liability is the rule, immunity the exception.' "[15]

In *Angnabooguk v. State*, we addressed certain firefighting decisions that were properly considered "discretionary" for purposes of state discretionary function immunity.[16] We rejected the argument that all firefighting decisions are necessarily discretionary because they all involve policy formulation.[17] Instead, we observed that certain "aspects of firefighting . . . can have an obvious planning or policy basis."[18] Such aspects may include "the number and location of fire stations, the amount of equipment to purchase, the size of fire departments, and other aspects involving the allocation of financial resources."[19] "[O]n-the-scene firefighting tactical decisions" such as the decision whether to use a backfire may also be discretionary "because they entail resource allocation decisions or considered decisions of firefighting policy that are properly vested in the officials in charge."[20] By contrast, we explained that other firefighting decisions that do not involve considerations of policy "are clearly

---

[14]     *Angnabooguk v. State*, 26 P.3d 447, 456 (Alaska 2001) (emphasis added).

[15]     *Sanders*, 944 P.2d at 456 (quoting *Johnson v. State*, 636 P.2d 47, 64 (Alaska 1981)).

[16]     26 P.3d at 454-59.

[17]     *Id.* at 456.

[18]     *Id.* at 458 (quoting *Harry Stoller & Co., Inc. v. City of Lowell*, 587 N.E.2d 780, 785 (Mass. 1992)) (internal quotation marks omitted).

[19]     *Id.* at 458-59 (citations omitted); *see Adams v. City of Tenakee Springs*, 963 P.2d 1047, 1051 (Alaska 1998) (holding that city's decision whether to allocate funds to hire firefighters was an immune planning decision).

[20]     *Angnabooguk*, 26 P.3d at 459 (citation omitted).

operational."[21] We suggested that such decisions likely include the decision to use lower water pressure, rendering a sprinkler system inoperable,[22] the decision not to build a firewall, and the decision not to post lookouts to watch a burnout.[23]

The decisions specifically challenged by Regner were: (1) the number of fire trucks and firefighters allocated to fight the fire; (2) using one fire department to "cover" another fire department; (3) the decision to enter the mobile home and apply water inside before addressing the fire outside; (4) the refusal to apply water to the well house in direct disregard of Regner's demands; (5) the refusal to allow Regner to combat the fire himself; and (6) the decision to let the fire "turn into a blaze . . . until the flames melted the metal siding of the mobile home and entered the structure."

The superior court concluded that "the decision of how many fire departments would respond to the fire was a policy decision entitled to discretionary function immunity," as was "the policy of using one fire department to 'cover' while another department fights a fire." As explained above, Regner does not contest these two rulings on appeal, but the superior court did not address the other decisions Regner challenged, and we are unable to conclude that the court implicitly found that the remaining decisions were immune planning decisions. Because the superior court did not address all of the challenged fire department decisions, we remand so that it can do so.

---

[21] *Id.*

[22] *Id.* (citing *Harry Stoller & Co., Inc.*, 587 N.E.2d at 784).

[23] *Id.*

## V.    CONCLUSION

For the foregoing reasons we REVERSE the superior court's grant of summary judgment on Regner's negligence claims and REMAND for further proceedings consistent with this opinion.