Michael T. ADAMS and Bettye Adams,
Appellants and Cross–Appellees,

v.

The CITY OF TENAKEE SPRINGS,
Alaska, Appellee and Cross–
Appellant.

Nos. S–8061, S–8091.

Supreme Court of Alaska.

Aug. 21, 1998.

Robert K. Reges and William G. Ruddy, Ruddy, Bradley & Kolkhorst, Juneau, for Appellants/Cross–Appellees.

Paul M. Hoffman, Robertson, Monagle & Eastaugh, P.C., Juneau, for Appellee/Cross–Appellant.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

### I. INTRODUCTION

In 1993 a fire destroyed several buildings in Tenakee Springs, including the Tenakee Inn. Michael and Bettye Adams, owners of the Inn, filed an action against the City, alleging that the City was negligent in fighting the fire and that its negligence was the proximate cause of the Inn's destruction. Following trial, the jury found that the City was not negligent. This appeal arises principally out of the superior court's decision to grant the City's pre-trial motion to exclude evidence that the City inadequately staffed its fire department. We must decide whether the City was entitled to discretionary function immunity for its allegedly inadequate staffing of the fire department. Because we conclude that staffing is a discretionary matter of resource allocation, we affirm.

### II. FACTS AND PROCEEDINGS

The City of Tenakee Springs lies on the north shore of Tenakee Inlet, Chicagof Island. This rural community has a population of approximately 100 residents. The Tenakee Inn, owned by the Adamses, stood on the waterfront side of the main street in Tenakee Springs.

The City established a fire department in 1974. In 1982 the Tenakee Springs City

Council passed an ordinance establishing a department of public safety. The ordinance merged law enforcement, fire protection, emergency medical services, and search and rescue services into a single department with a Village Public Safety Officer (VPSO) as its director. The ordinance also created the office of the chief of fire services and provided that the "chief and other fire service officers shall be appointed by the Director of public safety and confirmed by the city council." It further provided that the director should determine the organization of the department and provide for its staffing. The ordinance authorized the director to appoint both "regular" salaried members of the department of public safety and "special" members, such as volunteer firefighters.

In the early hours of July 19, 1993, a fire started on the waterfront in Tenakee Springs. The fire spread, eventually destroying the Tenakee Inn. According to the City, "[i]n less than two hours, nine buildings were just smoldering ruins."

The fire began at a cabin adjacent to the Tenakee Inn. Michael Adams estimated that the Inn was built fifteen to twenty feet away from the cabin. An alarm was sounded, and volunteer firefighters and others responded. The parties present differing accounts of what happened next. The City describes a competent fire department responding to a "rapidly expanding fire" that quickly engulfed the Inn in flames. But according to the Adamses the fire department was understaffed, ill prepared, and without a chief, VPSO, or "regular" firefighters. They claim that this inadequate department responded to a fire "spotted while it was confined to a small area," and that "[a]ctual firefighting fell to well-meaning, but totally untrained and unprepared citizens."

The Adamses sued to recover damages for the loss of their property. They alleged that the City was negligent in fighting the fire and that its negligence was the proximate cause of the destruction of the Tenakee Inn. The City moved for summary judgment, asserting discretionary function immunity for its actions. Ruling from the bench, Superior Court Judge Larry R. Weeks granted the motion "[t]o the extent that the motion is a motion with respect to how much Tenakee Springs spent." The court explained that the decision of how much money to allocate to firefighting was immune from suit. The court denied the motion, however, with respect to how the fire was fought, observing that decisions made "at the fire truck" were not discretionary policy matters entitled to immunity.

The City also filed a motion *in limine* to exclude "evidence and arguments suggesting that the fire department was inadequately staffed on July 19, 1993." This motion is at the heart of the appeal. The court granted the motion, reasoning that it was a "logical extension of the summary judgment motion with respect to resources." The Adamses moved for reconsideration. Their motion was denied on the ground that the City's resource allocation decisions were immune from review.

The case proceeded to trial on the question of the City's negligence. At the six-day trial, thirty witnesses testified, and the Adamses introduced evidence and advanced arguments regarding the fire department's inadequate training, planning, and leadership. At the close of trial, the judge instructed the jury that the City could not be liable for resource allocation decisions, but could be liable for negligent conduct:

> The city has the right to make decisions about how much money it wants to spend on a city service. However, once it takes on a responsibility to have a fire fighting service, it must conduct the operation in a non-negligent manner and it must conduct the service in the manner required by state law.

The jury returned a special verdict, finding that the City was not negligent in fighting the fire. The jury also found that the City did not fail to provide regulations for programs or actual programs "of pre-fire planning surveys, training, and fire safety and burn prevention education[ ] for its volunteer firefighters." The court then entered judgment for the City.

The Adamses appeal the exclusion of evidence of inadequate staffing. They also appeal the exclusion of a portion of a witness's

testimony and a post-trial decision granting a directed verdict on the issue of proximate cause.[1] The City cross–appeals, challenging the standard of care adopted by the court and the finding that the City's decision about how to fight the fire was not immune from review.

## III. DISCUSSION

### A. The Superior Court Did Not Err by Excluding Evidence that the Fire Department Was Inadequately Staffed.

■ The Adamses advance several theories in support of their argument that the superior court erred by granting the City's motion *in limine* to exclude evidence or any argument that the fire department was inadequately staffed the night of the fire. We review the superior court's decision to exclude evidence for abuse of discretion. *See Agostinho v. Fairbanks Clinic Partnership*, 821 P.2d 714, 716 n. 2 (Alaska 1991). Abuse of discretion is found "only 'when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.'" *Dura Corp. v. Harned*, 703 P.2d 396, 409 (Alaska 1985) (citation omitted).

Alaska Statute 09.65.070(d)(2) provides that neither a municipality nor its agents, officers, or employees are liable for failing to exercise a discretionary function.[2] Whether the superior court erred by excluding evidence of inadequate staffing therefore depends upon whether the City's staffing decisions were in fact discretionary.

■ We have established that while planning decisions are considered discretionary and are immune from suit, operational decisions are not. *See R.E. v. State*, 878 P.2d

1341, 1349 (Alaska 1994);[3] *Adams v. State*, 555 P.2d 235, 244 (Alaska 1976) ("The thread common to the many cases on the issue [of discretionary function immunity] is that the basic policy decision to undertake an activity is immune, but the execution is not."). Planning decisions involve policy formulation. *See State, Dep't of Transp. & Pub. Facilities v. Sanders*, 944 P.2d 453, 456 (Alaska 1997). Operational decisions are defined as "those that involve either no room for discretion or involve only discretion free from policy considerations." *R.E.*, 878 P.2d at 1349. Under the planning/operational test, "liability is the rule and immunity is the exception." *Sanders*, 944 P.2d at 456.

In considering the discretionary function immunity doctrine, we find guidance in the policy underlying it. *See id.* As we observed in *Sanders*,

[t]he policy underlying immunity is the necessity for judicial abstention in certain policy-making areas that have been committed to other branches of government. This policy in turn is based upon notions of separation of powers, and limitations on this court's ability to reexamine the questioned decision and the considerations that entered into it.

*Id.* at 456–57 (quotations and citations omitted).

#### 1. Resource allocation

■ The Adamses first contend that the City's staffing decisions merely executed the policy decision to create a municipal fire department. Thus, the Adamses argue that the staffing decisions were not entitled to immunity. We disagree.

---

1. The trial court reserved ruling on the City's motion for a directed verdict on causation until after the jury returned its verdict. Following the jury verdict, the court granted the motion.

2. AS 09.65.070(d) provides in relevant part:

 An action for damages may not be brought against a municipality or any of its agents, officers, or employees if the claim
 ....
 (2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or

its agents, officers, or employees, whether or not the discretion involved is abused[.]

3. *R.E. v. State*, 878 P.2d 1341, 1348–50 (Alaska 1994), addressed discretionary immunity for the State under AS 09.50.250(1). AS 09.50.250(1) provides similar discretionary function immunity for the State as AS 09.65.070(d)(2) provides for municipalities. We have previously applied the planning/operational test under both statutes. *See, e.g., Plancich v. State*, 693 P.2d 855, 857–58 (Alaska 1985); *Urethane Specialities, Inc. v. City of Valdez*, 620 P.2d 683, 687–88 (Alaska 1980).

Staffing a fire department, as the superior court concluded, is fundamentally a matter of resource allocation. *See Harry Stoller & Co. v. City of Lowell,* 412 Mass. 139, 587 N.E.2d 780, 785 (1992) (observing that the size of a fire department involves "policy considerations, especially the allocation of financial resources"). Decisions about how to allocate scarce resources are matters of policy immune from judicial review. *See Estate of Arrowwood v. State,* 894 P.2d 642, 646 (Alaska 1995) (holding that "legislative appropriations and executive department budget decisions are discretionary functions immune from judicial inquiry"); *Industrial Indem. Co. v. State,* 669 P.2d 561, 564–65 (Alaska 1983) ("Decisions regarding the allocation of scarce resources are usually discretionary, and thus immune from judicial inquiry."). Thus, in *Freeman v. State,* 705 P.2d 918 (Alaska 1985), for example, we held the State immune from liability for not allocating adequate funds to provide highway dust control because the decision involved "such basic policy factors as the cost of such a program, alternative uses for the money that would be needed for such a program, and the physical and environmental detriments which would be inherent in the several ... alternatives under consideration." *Id.* at 920.

In this case, the City's decision whether to allocate funds to hire firefighters involved comparable policy factors. Tenakee Springs is a rural community with about 100 residents. Review of the City's 1993 budget discloses a wide variety of municipal expenditures and relatively limited city revenues. The City had to weigh the fire department's staffing needs against the competing budgetary concerns of a small community. This balancing required the City to make policy decisions about the appropriation of funds. *Cf. Defrees v. United States Forest Serv.,* 738 F.Supp. 380, 385 (D.Or.1990) (observing that allocation of fire suppression resources involved "social and economic policy decisions" entitled to discretionary function immunity); *Invest Cast, Inc. v. City of Blaine,* 471 N.W.2d 368, 371 (Minn.App.1991) (stating that "fire department's decision on how many firefighter personnel and trucks to send to a fire is a policy decision protected as a discretionary function"). We therefore conclude that the City's staffing decisions were matters of resource allocation immune from judicial inquiry.

### 2. Municipal ordinances

The Adamses contend that even if the failure to hire firefighters would ordinarily be entitled to discretionary function immunity, it was not entitled to immunity in this case "because discretion may not be used to violate City Ordinances." According to the Adamses, the "doctrine of discretionary immunity does not protect a city from liability for damages which result from the City's failure to follow its own rules."

Discretionary functions performed by government officials may not be entitled to immunity if the officials violate "clearly established" law. *Integrated Resources Equity Corp. v. Fairbanks N. Star Borough,* 799 P.2d 295, 301 (Alaska 1990); *see also Breck v. Ulmer,* 745 P.2d 66, 73 (Alaska 1987) (holding that where officials exercised discretion within the scope of their authority, they were entitled to qualified immunity so long as they did not violate "clearly established" law). Thus, AS 09.65.070(d)(2) does not immunize a city for its "failure to follow its own rules." *Stanfill v. City of Fairbanks,* 659 P.2d 579, 582 n. 3 (Alaska 1983).

Additionally, a lack of resources does not permit a municipality to deviate from clearly established law. In *State, Department of Fish & Game v. Meyer,* 906 P.2d 1365, 1374 (Alaska 1995), the State Commission for Human Rights closed cases to control its budget despite a legislative mandate to investigate cases supported by substantial evidence. Although "sympathetic to the Commission's claim of lack of resources," we concluded that if the Commission wanted discretionary authority to dismiss cases, "it must be obtained from the legislature, not the judiciary." *Id.*

We must determine whether clearly established law required Tenakee Springs to hire firefighters. The Tenakee Springs City Council enacted an ordinance establish-

ing a fire department in 1974.[4] In 1982 it created a department of public safety with the VPSO as its director.[5] Although the record does not disclose whether the Tenakee Springs City Council expressly repealed the 1974 ordinance, we conclude that it did so impliedly when it passed the 1982 ordinance.[6] We therefore interpret the 1982 ordinance.

4. Tenakee Springs Ordinance 74–3 (1974) provides in part:

> 010. *City Fire Department Established.* There shall be a Fire Department in and for the City to be known as the "Tenakee Springs Fire Department." It shall consist of a Fire Chief and Assistant Fire Chief, and as many other officers and firefighters as the Council may deem necessary for the effective operation of the department.
> 020. *Volunteer Fire Department.*
> a. *[O]rganization.* Members of the Fire Department may organize into a voluntary association with the c[ ]lection of their own officers and by-laws.
> ....
> 030. *Fire Chief.*
> a. *Appointment.* The Fire Chief shall be appointed by the Council and shall be responsible to that body. His appointment shall be made for a term of one year, after the Council is re-organized following the annual city election.
> b. *Powers and Duties.*
> 1. The Fire Chief shall determine the number and kind of companies of which the Department is to be composed and shall determine the response of such companies to alarms.
> 2. He shall annually submit a budget request for his department upon a date fixed by the Council.
> 3. He shall appoint all other officers and firefighters....

5. Tenakee Springs Ordinance 82–14 (1982) provides in part:

> 00.01.00 DEPARTMENT CREATED. There is hereby established a department of public safety for the City of Tenakee Springs.
> 00.01.01 DIRECTOR. The Village Public Safety Officer shall be the director of the department.
> 00.02.00 APPOINTMENT OF DIRECTOR. The director is appointed by the mayor and confirmed by the Council. He serves at the pleasure of the mayor.
> 00.03.00 POWERS, DUTIES, AND RESPONSIBILITIES OF THE DEPARTMENT. The department shall have broad powers in the areas of law enforcement, fire protection, emergency medical service, and search and rescue.
> ....
> 00.03.02 FIRE PROTECTION. It is the duty of the Department to supervise the activities of the Tenakee Springs Volunteer Fire Department; extinguish fires; rescue persons endangered by fire; promote fire prevention; enforce all ordinances pertaining to fire, fire prevention and safety of persons threatened by fire; and in all respects perform all duties pertaining to the office of fireman. The department shall register with the State Fire Marshall's office as a formally constituted fire department.
> (a) The office of chief of fire services is hereby created.
> (b) The chief and other fire service officers shall be appointed by the Director of public safety and confirmed by the city council.
> (c) Members of the fire department may organize into a voluntary association with the election of their own officers and by-laws.
> 1. The functions and duties of the officers of the voluntary association shall not interfere with those of regular department officers who are charged with responsibility for all fire service activities of the department.
> ....
> 00.04.00 DEPARTMENT DIRECTOR. The Director (VPSO) is the commanding officer of the department. His or her duties shall include, but are not necessarily limited to, the following:
> 01. determine the organization of the department and provide for its staffing;
> ....
> 00.08.00 DEPARTMENT MEMBERS—REGULAR AND SPECIAL.
> A. The number of regular and special department members shall be appointed by the director consistent with existing personnel policies of the city....

6. Some courts recognize "a presumption against repeal of prior laws by implication." 1A Norman J. Singer, *Sutherland Statutory Construction* § 23.10, at 353 (5th ed.1993). We do not. *See Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 516 (Alaska 1998). But preexisting law may be abrogated by comprehensive revision:

> Legislation which operates to revise the entire subject to which it relates, gives strong implication of a legislative intent ... to repeal former statutory law.... Therefore, the failure to set out former statutory provisions in a later comprehensive enactment will operate to repeal the omitted provisions which are inconsistent, and also former provisions which are not repugnant to the later legislation.

*Id.* § 23.13, at 366 (footnote omitted).

The 1982 Tenakee Springs ordinance represents a comprehensive reorganization of the City's public safety program, including the fire department. In the area of fire protection, the latter ordinance grants "broad powers" to the department of public safety and supplants the previously established fire department. In effect, the 1982 ordinance revises the entire subject of the fire department and operates to repeal its 1974 predecessor. *See also McInnis v. State*, 603

■ Our analysis begins with section 00.03.02(a), under which "[t]he office of chief of fire services is ... created." Significantly, neither it nor any other provision of the ordinance establishes additional offices or positions in the fire department. Staffing of the department of public safety, including the fire department, is instead left to the determination of the department director under section 00.04.00.01. Section 00.03.02(b), however, provides that the "[t]he chief and other fire service officers shall be appointed by the [d]irector of public safety and confirmed by the city council." The Adamses urge us to adopt a mandatory reading of "shall" such that the City is required to hire "salaried officers." We decline to do so. In the context of section (a), which creates only the office of the chief, we do not interpret section (b) to require the City to create additional offices or positions. Rather, we read section (b) as setting forth the mandatory procedures to be followed if additional appointments are made. Thus, section (b) is mandatory only in the sense that if additional officers are hired, the appointments must be made by the director of public safety and confirmed by the city council. We therefore conclude that no clearly established law requires the City to hire firefighters other than the chief of fire services.

■ Because the ordinance does require the City to have a fire chief, however, we must determine whether the superior court excluded evidence that the City failed to staff the office of the chief. The City contends that, despite the motion *in limine*, the Adamses did introduce evidence and present argument regarding the City's staffing of the office of the chief of fire services. We agree.

At trial, several witnesses, including Dale Ziel, the mayor of Tenakee Springs in July 1993, and J.C. Wisenbaugh, the vice president of the city council in July 1993, testified about fire department leadership on the night of the fire. Ziel explained that the VPSO, who was the chief of fire services under the 1982 ordinance, had left Tenakee Springs sometime before the fire and that his replacement had not been designated by that time. Wisenbaugh confirmed that at the time of the fire, no one had been appointed to replace the departed VPSO. Additionally, in closing argument, the Adamses argued that the City was required by ordinance to have a fire chief. They further referred to the fact that the VPSO had left Tenakee Springs shortly before the fire. Indeed, the Adamses concede that they were able to introduce evidence that "had to do with this question of whether someone was in charge at the fire." Against this backdrop, we conclude that the Adamses were not prevented from introducing evidence and arguing about the inadequate staffing of the office of chief of fire services. Given the substantial material the Adamses were able to introduce at trial, any error related to the exclusion of evidence on this topic was harmless.

■ The Adamses also advance a reliance argument. They contend that had Tenakee Springs not created a fire department, the citizens could have created their own fire response team. "[H]aving ensured that the citizens would rely upon the municipal fire department," the Adamses argue that "the municipality was required to provide effective fire protection." This argument is misplaced.

■ Reliance is relevant to whether a duty exists. Thus, a city may owe its residents a duty to provide fire protection if its residents rely to their detriment on the fire department. In this case, however, Tenakee Springs does not contest that it owed a duty to its residents; instead, the City assumes the existence of a duty and argues that its decisions made in furtherance of the duty were entitled to discretionary immunity. The reliance of Tenakee Springs residents on

S.W.2d 179, 183 (Tex.1980) ("A statute that covers the subject matter of a former law and is evidently intended as a substitute for it, although containing no express words to that effect, operates as a repeal of the former law to the extent that its provisions are revised and its field freshly covered."); *Nehring v. Russell*, 582 P.2d 67, 73 (Wyo.1978) (*stating that implied repeal is shown where "the whole subject of the earlier [ordinance] is covered by the latter one having the same object, clearly intending to prescribe the only rules applicable to the subject"*).

the fire department does not pertain to this inquiry.

### B. *The Superior Court Did Not Err by Excluding a Portion of a Witness's Testimony.*

 The Adamses maintain that the superior court should not have excluded a portion of the testimony of Mel DeHart, a Tenakee Springs resident. DeHart testified in a deposition that on an unspecified date before the events at issue in this appeal, he saw the Tenakee Springs fire department fight a fire ineffectively. He testified that he learned from the experience "[t]hat I better be prepared to stop a fire if it starts at my place right at the beginning." The court excluded the testimony.[7] The Adamses claim that DeHart's testimony "would have tended to show that the citizens would have been prepared to defend themselves but for the City's representations of preparedness." The superior court's decision on the admissibility of evidence is reviewed for abuse of discretion. *See Estate of Arrowwood v. State*, 894 P.2d 642, 646 n. 13 (1995).

 First, to the extent the testimony supports the Adamses' reliance argument, it is misplaced. Second, under Alaska Rule of Evidence 403, a trial court may exclude evidence "if its probative value is outweighed by the danger of unfair prejudice." Nothing in the record indicates when the fire that DeHart witnessed occurred or that it was similar to the fire in this case. Indeed, DeHart testified that the general time period was "pretty vague in [his] mind." Moreover, the testimony does not clearly support the propo-

sition for which it was introduced. In short, review of the excluded testimony does not indicate that its probative value outweighed the danger of unfair prejudice. Finally, under Alaska Rule of Evidence 404(b),[8] testimony about the City's negligence in fighting one fire is not admissible as proof of negligence in fighting another.[9] We hold that the superior court did not abuse its discretion by excluding this portion of DeHart's testimony.

Given our conclusion that the superior court's decision to exclude evidence of inadequate staffing was sound and in light of the jury's finding that the City was not negligent, we need not reach the Adamses' argument that a directed verdict on the issue of proximate cause would not have been granted if the evidence of inadequate staffing had not been excluded. Furthermore, given our disposition of the Adamses' arguments on appeal, we need not reach the City's arguments on cross-appeal.

### IV. *CONCLUSION*

For the foregoing reasons, the judgment of the superior court is AFFIRMED.

---

7. The court ruled:

> I will exclude it. I guess I think that it may have some relevancy. I think that it's also potentially unfairly prejudicial. And I think in the weighing of it, it doesn't say when it really occurred in the context.

After a brief exchange with counsel, the court elaborated:

> And I do it because of the proximity to the time and that not being definite, the lack of similar circumstances. And that's not the issue that is to be tried here. It's not that fire. It's how they responded to this fire.

8. Alaska Rule of Evidence 404(b) provides in part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

9. *See, e.g., Wickwire v. Arctic Circle Air Servs.*, 722 P.2d 930, 934 (Alaska 1986).