**Gary E. ROBLES, Appellant,**

v.

**SHORESIDE PETROLEUM, INC., and Petrolane Incorporated, d/b/a Petrolane Gas, Soldotna, Alaska, Appellees.**

No. S–8617.

Supreme Court of Alaska.

Aug. 31, 2001.

---

Laurel J. Peterson and Kristi Nelson Pennington, Law Offices of Laurel J. Peterson, Anchorage, for Appellant.

Daniel T. Quinn and Gregory R. Henrikson, Richmond & Quinn, Anchorage, for Appellee Shoreside Petroleum, Inc., and Larry G. Berry, Robertson, Monagle & Eastaugh, Anchorage, for Appellee Petrolane Incorporated.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. *INTRODUCTION*

Gary Robles, the operator of a Seward gas station, was seriously injured when a propane tank he was filling for a customer exploded. Robles sued Shoreside Petroleum, Inc., his propane supplier, and Petrolane Incorporated, the wholesale propane distributor, claiming (1) Petrolane and Shoreside negligently trained him in the safe handling of propane; (2) Shoreside negligently circulated dangerously old propane tanks in Seward, including the tank that exploded in this case; and (3) Shoreside negligently failed to warn him of the dangers associated with filling these old tanks. The superior court allowed the jury to consider Robles's claim of negligent training but not his other two claims. We reverse, finding that it was error to exclude evidence that Shoreside knew that unsafe propane tanks were circulating in Seward, since this evidence supported a potentially viable claim against Shoreside for failing to warn Robles of this danger.

## II. *FACTS AND PROCEEDINGS*

On October 6, 1993, a 100–pound propane tank exploded at the Tesoro station in Seward, injuring Robles, who leased the station, and Robert Gannaway, his customer. While Robles was filling the tank, the corroded bottom gave way under pressure. The last known inspection of this tank was in 1964, despite federal regulations requiring that propane tanks periodically be recertified.

Robles sued Shoreside, his propane supplier, and Petrolane, Shoreside's wholesale distributor, for negligently training him in the safe handling of propane. At his deposition and at trial, Robles claimed that he received only ten minutes of training on dispensing propane from Petrolane's employee Del Hoagland; according to Robles, this training included no discussion of inspection and certification requirements and only a general warning not to fill excessively rusty and dented cylinders. Hoagland, on the other hand, testified that he had extensively trained Robles on the need to inspect used cylinders and to reject them if the certifica-

tions were out of date. Shoreside maintained that it relied on Petrolane to perform dealer training, since Petrolane installed the dealers' dispenser tanks and, in the past, voluntarily trained dealers how to use them.

Robles also claimed that Shoreside was negligent for filling uncertified tanks and failing to warn Robles that these uncertified tanks were circulating in the Seward community. Federal regulations require that propane tanks be inspected and recertified twelve years after manufacture and every five to seven years thereafter.[1] Shoreside had the capacity to recertify tanks. Nevertheless, Robles offered evidence that Shoreside's employees regularly filled outdated tanks for the company's retail customers. The superior court excluded the evidence as irrelevant, confusing, and unfairly prejudicial. The court acknowledged that its ruling left Robles with only his negligent training claim and effectively barred him from arguing his two alternative theories of negligence: (1) that Shoreside had previously filled and re-circulated the outdated tank that caused his injury and (2) that it had failed to warn Seward suppliers, including Robles, that it was refilling outdated tanks and circulating them back into the community. But the court reasoned that these alternative theories were not legally viable.

The jury found that Petrolane and Robles were equally negligent. While the jury also found that Shoreside was negligent in relying on Petrolane to provide Robles with adequate training, it concluded that this negligence was not a legal cause of the explosion. Thus, the jury allocated half the liability for the explosion to Petrolane and half to Robles.

## III. DISCUSSION

### A. Standard of Review

On issues of law, this court exercises its independent judgment, "adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy."[2] Because the court in effect granted summary judgment on two of Robles's negligence claims, we draw all reasonable inferences in his favor and affirm only if there is no genuine issue of material fact.[3]

### B. A Jury Could Not Reasonably Find That Shoreside's Filling Practices Directly Caused Robles's Injuries.

Robles argues that the superior court erred in excluding all evidence concerning Shoreside's practice of filling outdated tanks, because the jury could reasonably find that Shoreside's negligent failure to inspect or dispose of old propane tanks directly caused his injuries—that is, the explosion in this case involved an outdated tank that Shoreside had previously filled.

Alaska applies a two-part test of legal causation in negligence cases.[4] "First, plaintiff must show that the accident would not have happened 'but for' the defendant's negligence. Second, the negligent act must have been so important in bringing about the injury that a reasonable person would regard it as a cause and attach responsibility to it."[5] This second issue, proximate cause, is normally a question of fact for the jury, but it becomes a matter of law where reasonable minds could not differ.[6]

The superior court concluded that there was insufficient evidence for a reasonable jury to find that Shoreside directly caused Robles's injuries. Gannaway, the owner of the tank that exploded, could not recall if he had ever filled his tank at Shoreside. When the explosion occurred in 1993, Gannaway owned four to six propane tanks, all of them

---

1. See 49 C.F.R. § 173.34 (1991); see also National Fire Protection Association safety standard 58 § 4–2.2.3 (1989).

2. Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979); see also State, Dep't of Revenue v. Gerke, 942 P.2d 423, 425 (Alaska 1997).

3. See Dayhoff v. Temsco Helicopters, Inc., 772 P.2d 1085, 1086 (Alaska 1989).

4. See Maddox v. River & Sea Marine, Inc., 925 P.2d 1033, 1039 (Alaska 1996).

5. Id.

6. See Dura Corp. v. Harned, 703 P.2d 396, 406 (Alaska 1985).

rust-colored. He testified that he almost always filled them at the Chevron station in Seward but that on one or two occasions before 1991 he had filled some tanks at Shoreside. Robles offered no other evidence to support his theory of direct causation. Even assuming that the excluded evidence might have enabled the jury to find that Shoreside regularly filled uncertified tanks in 1991, only speculation would have allowed the jury to conclude that the tank in this case was one of those that Shoreside had negligently refilled for Gannaway. And given the two years that elapsed from this negligent act to the explosion, the jury had no basis for finding that the negligence was "so important in bringing about the injury that a reasonable person would regard it as a cause and attach responsibility to it." [7]

### C. A Jury Could Reasonably Find That Shoreside Was Negligent in Failing to Warn Robles.

Robles next argues that the superior court erred in excluding evidence to support his claim that Shoreside had negligently failed to warn him of the danger of refilling outdated propane tanks. He contends that Shoreside had an affirmative duty—analogous to that imposed on product manufacturers and suppliers under Restatement (Second) of Torts § 388—to warn him that it was not complying with tank certification requirements. In excluding evidence of Shoreside's non-compliance, the superior court apparently believed that Shoreside had no special duty to warn dealers that outdated tanks posed a danger, apart from the duty to train asserted in Robles's first theory of negligence. But we agree with Robles that the excluded evidence might have established a separate duty to warn Robles of the danger.

Restatement (Second) of Torts § 388 provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Alaska has not explicitly adopted § 388.[8] But in an analogous area, this court has recognized a manufacturer's strict liability for failure to warn if a product is defective because of "misinformation or inadequate information about risks involved in using the product or about minimizing or avoiding harm from such risks." [9]

While other jurisdictions have often declined to hold suppliers of gasoline or propane liable for accidents caused by use of these substances in defective equipment that the suppliers do not own or control, courts have made an exception if the suppliers have actual or constructive notice of the defective condition.[10] Thus, for example, a gas company that is aware that a service line is dangerously rusted and corroded "must cause the line to be repaired by the person whose duty it is to do so or must shut off the gas at the street." [11] Similarly, a gas company has a

---

7. *Maddox*, 925 P.2d at 1039.

8. See *Maddox*, 925 P.2d at 1036; *see also Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 788 (Alaska 1993).

9. *Prince v. Parachutes, Inc.*, 685 P.2d 83, 87 (Alaska 1984) (quoting *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 878 n. 15 (Alaska 1979)).

10. See, e.g., *Skelly Oil Co. v. Holloway*, 171 F.2d 670, 674 (8th Cir.1948); *Doxstater v. Northwest Cities Gas Co.*, 65 Idaho 814, 154 P.2d 498, 504

(1944); *Clay v. Butane Gas Corp.*, 151 Neb. 876, 39 N.W.2d 813, 820 (1949); *Caldwell v. Morrison*, 240 N.C. 324, 82 S.E.2d 86, 89 (1954); *Price v. MacThwaite Oil & Gas Co.*, 177 Okla. 495, 61 P.2d 177, 179 (1936); *Reeder v. Western Gas & Power Co.*, 42 Wash.2d 542, 256 P.2d 825, 828 (1953); *see also* 41 A.L.R.3d 782, 790–91 (1972).

11. *Ambriz v. Petrolane, Ltd.*, 49 Cal.2d 470, 319 P.2d 1, 6 (1957) (quoting 24 Am.Jur. *Gas Companies* § 32).

duty to warn a customer about a dangerous condition posed by the use of an appliance owned by a customer if the company has inspected the appliance or otherwise has notice of the dangerous condition.[12]

In applying Restatement (Second) of Torts § 388, the Supreme Court of Iowa recently noted that this duty to warn is based on the supplier's superior knowledge of the danger posed by its product.[13] In two cases decided under New York law, courts have specifically recognized that the question of whether propane distributors owe a duty to warn of uses that pose non-obvious dangers is a question for the fact-finder.[14] And more recently, a third New York case recognized that a manufacturer of a propane grill that exploded while in use in a semi-enclosed area might have had a duty to warn of the danger, "even assuming the accident was caused by a defect in a valve incorporated into a propane tank neither of which [it] manufactured."[15]

Considering the hazardous nature of propane and the foreseeability of serious injury from its misuse in outdated tanks, we find the policy rationale underlying these authorities persuasive. Here, Shoreside acted in two capacities—as a supplier to retailers like Robles and as a seller to its own retail customers. Federal law expressly required Shoreside, as a propane seller, to inspect any tanks that it refilled; federal law also expressly prohibited Shoreside from refilling outdated tanks.[16] We cannot say that these regulatory requirements or the dangers posed by failing to comply with them would be obvious to the typical propane user. Of course, Robles, like Shoreside, was a retail propane seller; as such, he had a duty to comply with these requirements and was arguably the kind of "sophisticated" or "knowledgeable" propane user who needed no extra warning to recognize the dangers of filling uncertified tanks.[17] But this characterization does not necessarily apply to Robles, because, as the jury specifically found, he had not received adequate training from Petrolane. In its capacity as a supplier to retailers, Shoreside potentially had better knowledge of the general dangers; and in its capacity as a retail seller, it arguably knew or should have known of an increased risk to Robles.

■ Thus, viewing the excluded evidence in the light most favorable to Robles, the jury might have found that, in its capacity as a retailer, Shoreside routinely violated federal regulations by refilling outdated propane tanks and recirculating them in dangerous

---

12. See Hanlon v. Lane, 98 Ohio App.3d 148, 648 N.E.2d 26, 28 (1994).

13. See Lamb v. Manitowoc Co., 570 N.W.2d 65, 68 (Iowa 1997).

14. See Parsons v. Honeywell, Inc., 929 F.2d 901, 906–07 (2d Cir.1991) (reversing summary judgment in favor of the propane gas distributor because "district court erred in reaching the legal conclusion that Northern had no duty whatsoever to provide any warnings relating to the use of its product"); Lancaster Silo & Block Co. v. Northern Propane Gas Co., 75 A.D.2d 55, 427 N.Y.S.2d 1009, 1015–16 (1980) (holding that the trial court erred when it refused to provide a jury instruction regarding whether the propane distributor had a duty to warn); see also Rogers v. Sears, Roebuck & Co., 268 A.D.2d 245, 701 N.Y.S.2d 359 (N.Y.App.Div.2000) (it is a jury question whether the propane grill manufacturer (Sears) owes a duty to warn, even if the accident was caused by defective products attached to the propane tank that Sears did not manufacture).

15. Rogers, 701 N.Y.S.2d at 360.

16. Title 49 of the Code of Federal Regulations provides that "[n]o person may charge or fill a cylinder" unless the cylinder complies with federal regulations, which include standards for testing, date stamping, marking, and packaging. 49 C.F.R. § 173.34(a)(1) (1999). "A cylinder that leaks, is bulged, has defective valves or safety devices, bears evidence of physical abuse, fire or heat damage, or detrimental rusting or corrosion, must not be used unless it is properly repaired and requalified." Id. A propane cylinder must be inspected and date-stamped no more than twelve years after manufacture. See 49 C.F.R. § 173.34(e)(1)-(11), (13), (15) (1999). If the tank is requalified by visual inspection, the tank must be qualified again every five years. See 49 C.F.R. § 173.34(e)(10) (1999). If the cylinders are hydrostatically re-tested, longer grace periods apply. See 49 C.F.R. § 173.34(e)(1) (1999).

17. See, e.g., Restatement (Second) of Torts § 388, cmt. k; 63A Am.Jur.2d Products Liability § 1163–64 (1997); cf. Freeman v. United Cities Propane Gas of Georgia, 807 F.Supp. 1533, 1537–39 (M.D.Ga.1992) (discussing duty to warn under Restatement (Second) of Torts § 388, cmt. n, where propane retailer is "learned intermediary").

condition into the community.[18] The jury also might have found that, by circulating dangerous tanks into the small community of Seward, Shoreside acquired constructive knowledge that its dealers were exposed to increased risk by being asked to refill the tanks that Shoreside improperly recirculated. Given Robles's inadequate training, the jury might have found that the danger would not have been obvious to him. These findings, in turn, might have allowed the jury to conclude that, as a supplier, Shoreside owed a duty to alert Robles to the heightened risk that it had created.[19]

Because it was foreseeable that these tanks would later be presented to other propane retailers, a jury could reasonably find that Shoreside's failure to warn Robles of this danger was a legal cause of his injuries. Moreover, even if Shoreside owed no independent duty to warn Robles of the dangers posed by refilling uncertified tanks, evidence concerning Shoreside's unlawful refilling practices might have altered the jury's find-

ing that Shoreside's negligent failure to ensure that Robles was adequately trained was not a legal cause of his injuries.[20] We thus conclude that it was error to exclude all evidence of Shoreside's tank-filling practices. The error requires a retrial on the issue of Shoreside's negligent failure to warn and on the related issues of causation and comparative fault.[21]

### D. Evidence of Habit Was Properly Excluded.

To corroborate his claim that Petrolane and Shoreside had negligently failed to provide him with adequate training, Robles offered evidence intended to show that the companies also routinely failed to train other retailers. The superior court excluded this evidence. Robles claims that this ruling was error, arguing that the excluded testimony was admissible under Alaska Evidence Rule 406 as evidence of a routine business practice.[22]

---

**18.** The affirmative duty imposed by the federal regulations distinguishes Shoreside's situation from that considered in *Acoba v. General Tire, Inc.*, 92 Hawai'i 1, 986 P.2d 288 (1999), where the Hawaii Supreme Court declined to impose a duty to warn on the manufacturers of non-dangerous products—auto tires and inner tubes—that became dangerous "simply because" they were used in conjunction with a defective rim that those manufacturers did not produce, distribute, or control. *Id.* at 305. In contrast to the tire and inner tube manufacturers in *Acoba*, Shoreside sold an inherently dangerous product, not an otherwise safe product that became dangerous "simply because" it was compatible for use with a defective product. *See Fickes v. Petrolane–Alaska Gas Serv., Inc.*, 628 P.2d 908, 912 (Alaska 1981) (propane is inherently dangerous product and requires degree of care commensurate with that danger). Moreover, unlike the manufacturers in *Acoba*, Shoreside exercised significant control over the defective product. Because of propane's inherently dangerous properties, federal law requires propane to be kept in certified containers. Applicable regulations gave Shoreside actual control over any empty container that its customers asked it to fill and affirmatively required Shoreside to inspect these empty containers and refrain from filling them if they were outdated or defective. *See* supra note 16. And finally, in opposition to the evidence in *Acoba*, which failed to show that the manufacturers' conduct or products enhanced the risk of injury at issue, *see Acoba*, 986 P.2d at 305, the excluded evidence showing Shoreside's violation of the federal regulations, when viewed in the light most favorable to Robles, might have per-

mitted the jury to conclude that Shoreside appreciably contributed to the risk that resulted in Robles's injuries.

**19.** Contrary to the dissent's suggestion that this opinion "implies that it is the jury's role to determine if such a duty even exists," Dissent at 18, the jury does not decide when a duty should exist but decides only if the facts that give rise to a duty exist.

**20.** To this extent, we note that Shoreside's alleged conduct of unlawfully filling uncertified tanks and allowing them to be returned to circulation might be likened to the conduct of a distributor of defective products. *See, e.g.,* Restatement (Third) of Torts: Products Liability § 4 ("In connection with liability for defective design or inadequate instructions or warnings: (a) a product's noncompliance with an applicable product safety statute or administrative regulation renders the product defective with respect to the risks sought to be reduced by the statute or regulation; . . . .").

**21.** We see no reason to disturb the jury's determination on the issue of overall damages.

**22.** We review appeals from exclusions of evidence for abuse of discretion. *See Adams v. City of Tenakee Springs*, 963 P.2d 1047, 1050 (Alaska 1998). Abuse of discretion is found "only when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Id.* (quoting *Dura*

But a trial judge "should possess the discretion usual in this field of circumstantial evidence to exclude (evidence of habit) if the habit is not sufficiently regular and uniform, or the circumstances sufficiently similar, to outweigh the danger, if any, of prejudice or confusion." [23] We are convinced after a review of the record that the superior court did not abuse its discretion in determining that the disputed evidence did not establish a routine training practice and it was therefore inadmissible under Rule 406.

### E. *Evidence of Subsequent Remedial Measures Was Properly Excluded.*

Robles next argues that the superior court should have admitted evidence that Shoreside held safety training sessions with Petrolane and took other remedial measures after the accident. The superior court granted Petrolane's motion in limine to exclude this evidence under Alaska Rule of Evidence 407, which bars evidence of subsequent remedial measures offered to prove negligence or culpable conduct:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as impeachment or, *if controverted,* proving ownership, control, feasibility of precautionary measures, or defective condition in a products liability action.[24]

Robles contends that the evidence of subsequent remedial measures should have been admitted to demonstrate Shoreside's control over training, and the feasibility of federal regulations for ensuring the safety of propane tanks. But because these issues were never controverted at trial, Robles's argument lacks merit.

Robles also contends that evidence of post-accident training should have been admitted to impeach Petrolane's claim that it had given Robles adequate training before the accident. But while it is an abuse of discretion to exclude evidence that genuinely impeaches a witness, particularly on central facts in dispute, the trial court must exclude evidence of subsequent remedial measures that "reflects on the witness only by means of a prohibited inference of negligence." [25]

The adequacy of Robles's training was a central issue. Robles claimed that he was given a cursory, ten-minute training that included no discussion of tank inspection or certification requirements. Petrolane's Hoagland, on the other hand, testified that he gave Robles detailed training on the hazards of handling propane, including the risks of filling old, uncertified tanks. The evidence of Shoreside's and Petrolane's post-accident training measures would not have "genuinely impeached" Hoagland. It would only have reflected on his testimony through the forbidden inference of negligence—that is, by implying that the companies' subsequent remedial measures amounted to an admission that they had negligently failed to provide adequate pre-accident training.[26] Under these circumstances, the superior court did not abuse its discretion in finding that the public policy concerns underlying Evidence Rule 407—encouraging defendants to take safety precautions after accidents—outweighed the evidence's marginal impeachment value.

---

Corp. v. Harned, 703 P.2d 396, 409 (Alaska 1985)).

23. *Farnsworth v. Steiner,* 601 P.2d 266, 271 (Alaska 1979) (quoting Charles McCormick, *Law of Evidence* § 195, at 463 (2d ed.1972)).

24. Alaska R. Evid. 407 (emphasis added).

25. *Agostinho v. Fairbanks Clinic Partnership,* 821 P.2d 714, 716 (Alaska 1991) (quoting Jack B.

Weinstein and Margaret A. Berger, 2 *Weinstein's Evidence* ¶ 407[05], at 407–35 (1990)).

26. Petrolane and Shoreside did not assert that the pre-accident training provided to Robles was as comprehensive as the post-accident training, only that it comported with industry standards and was not negligent. Hoagland also never compared his training of Robles with the post-accident training.

### F. Robles's Punitive Damages Claim Was Properly Dismissed.

 Robles also argues that the superior court erred in granting Petrolane's summary judgment motion on Robles's punitive damages claim and in rejecting Robles's jury instruction on punitive damages when the issue was revisited. The superior court found that Robles failed to make the showing of reckless indifference sufficient to permit the issue to go to the jury. In reviewing grants of summary judgment, we use our independent judgment.[27]

██ To recover punitive damages, "the plaintiff must prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motives, or reckless indifference to the interests of another."[28] If there is no evidence giving rise to an inference of actual malice, or reckless indifference equivalent to actual malice, the trial court need not submit the issue of punitive damages to the jury.[29]

Reviewing the record in the light most favorable to Robles, we conclude that a reasonable jury could not find that Petrolane and Shoreside acted out of malice or with reckless disregard of Robles's safety. Accordingly, the superior court did not err in striking Robles's claim for punitive damages.[30]

### IV. CONCLUSION

This case is AFFIRMED in part; REVERSED in part; and REMANDED to the superior court for retrial on the issue of Shoreside's negligent failure to warn and on related issues of causation and comparative fault. Because there were no errors relating to the jury's assessment of damages, that assessment should not be disturbed.

FABE, Justice, concurring in part and dissenting in part.

I join the opinion of the court in all respects except for Part III.C. As for that part, I disagree with the court's holding that Shoreside may have had a duty to warn Robles of risks created by Shoreside's practice of refilling outdated propane tanks. However, I agree with the court's conclusion that the superior court erred in excluding all evidence of Shoreside's tank-filling practices, because this evidence might have altered the jury's finding that Shoreside's negligent failure to ensure that Robles was adequately trained was not a legal cause of his injuries. Therefore, I concur and dissent in part.

The court today imposes a novel duty on persons who supply and maintain potentially dangerous products. The court declares that evidence of Shoreside's own refilling practices, excluded by the superior court, "might have established a ... duty to warn Robles" of the danger of refilling outdated propane tanks.[1] The court claims that Shoreside may owe this duty because Shoreside improperly refilled certain propane containers in violation of federal regulations, exposing dealers like Robles to enhanced risks.[2]

This duty to warn is only vaguely defined. First, the court implies that it is the jury's role to determine if such a duty even exists, stating that evidence presented by Robles "might have allowed the jury to conclude that, as a supplier, Shoreside owed a duty to alert Robles...."[3] This delegation to the jury of the responsibility to determine whether a duty exists is contrary to our rule

27. See DeNardo v. GCI Communication Corp., 983 P.2d 1288, 1289 (Alaska 1999).

28. Chizmar v. Mackie, 896 P.2d 196, 210 (Alaska 1995) (quoting Lee Houston & Assocs. v. Racine, 806 P.2d 848, 856 (Alaska 1991)).

29. See Alyeska Pipeline Serv. Co. v. O'Kelley, 645 P.2d 767, 774 (Alaska 1982).

30. Our disposition of other issues makes it unnecessary to address Robles's claim that the superior court erred in entering a final judgment that incorporated Gannaway's pre-trial settlement agreement. Robles has also challenged the exclusion of evidence showing that Seward dealers were generally unaware of date stamp requirements. But we consider this argument to be inadequately briefed, because Robles fails to specify what evidence was erroneously excluded. See Pieper v. Musarra, 956 P.2d 444, 446 (Alaska 1998).

1. 29 P.3d at 842.

2. See id. at 843.

3. Id. at 844.

that "[t]he existence and extent of a duty of care are questions of law for the court to determine."[4] Also, the scope of the duty is unclear. If Shoreside owed a duty to warn Robles of its improper refilling practices, this implies that Shoreside owed that same duty to all of its other dealers who were exposed to the same risk.[5] It is unclear whether the scope of this duty extends still further: The opinion could be read to establish a duty owed to all members of the community who were exposed to these risks.[6]

The duty to warn created by the court is entirely new and is not supported by the authorities on which the court's opinion relies. The court essentially relies on two sources to support its imposition of a new duty to warn on Shoreside: (1) the Restatement (Second) of Torts § 388, which imposes a duty to warn on certain suppliers of chattels, and (2) the rule that a supplier of liquid fuel may be liable for defects in containers or equipment that the supplier does not use or control, if the supplier had knowledge of the defect. Neither of these authorities squarely supports the creation of a duty to warn on Shoreside's part.

First, neither of these sources of law supports the imposition of a duty to warn on Shoreside, because there is no evidence that the particular tank that exploded and caused Robles's injuries was ever improperly refilled by Shoreside. As the court's opinion acknowledges, "Gannaway, the owner of the tank that exploded, could not recall if he had

ever filled his tank at Shoreside."[7] Restatement (Second) of Torts § 388 by its own terms only imposes liability on suppliers of a chattel for injuries caused by *that* chattel; and none of the decisions concerning section 388 cited by the court's opinion supports the conclusion that section 388 liability can exist in the absence of evidence that the chattel causing injury was supplied by the defendant.[8]

The same is true for the decisions cited by the court's opinion supporting the rule that suppliers of liquid fuel may be liable for defects in containers or equipment used if the supplier had knowledge of the defect. In the decisions applying this rule to impose liability on suppliers, the injured parties had alleged and presented evidence that the supplier had an opportunity to inspect or discover the defective condition, but failed to do so.[9] These cases do not apply to the circumstances of this appeal, since there is no evidence that Shoreside improperly refilled the particular container involved in the accident. If such evidence is not required, the imposition of a duty to warn is too broad because it makes a supplier responsible for issuing warnings to customers who never came into contact with that supplier's containers or equipment.

Also, as the court's opinion acknowledges, suppliers are liable under this rule only if they have "actual or constructive knowledge" of the defect.[10] However, courts considering the duty to warn under section 388 have

---

**4.** *Bolieu v. Sisters of Providence in Washington,* 953 P.2d 1233, 1235 (Alaska 1998) (quoting *Beck v. State, Dep't of Transp. & Pub. Facilities,* 837 P.2d 105, 109 (Alaska 1992)).

**5.** *See* 29 P.3d at 844.

**6.** *See id.* at 843–844.

**7.** *Id.* at 841.

**8.** *See Lamb v. Manitowoc Co.,* 570 N.W.2d 65, 68 (Iowa 1997) (declining to impose section 388 liability on manufacturer of crane involved in injury because manufacturer had no notice of dangerous condition); *Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 A.D.2d 55, 427 N.Y.S.2d 1009, 1015–16 (1980) (ordering trial on issue of whether supplier of portable propane cylinder had duty to warn under section 388).

**9.** *See Skelly Oil Co. v. Holloway,* 171 F.2d 670, 674, 679 (8th Cir.1948) (defendant's inspection failed to reveal leak in gas line that caused injuries); *Ambriz v. Petrolane, Ltd.,* 49 Cal.2d 470, 319 P.2d 1, 6–7 (1957) (defendant failed to make proper inspection that would have revealed leak in gas line that caused injuries); *Clay v. Butane Gas Corp.,* 151 Neb. 876, 39 N.W.2d 813, 820–22 (1949) (defendant failed to inspect or discover conditions of butane gas pipes and tank that caused injuries); *Reeder v. Western Gas & Power Co.,* 42 Wash.2d 542, 256 P.2d 825, 828–29 (1953) (defendant failed to inspect pipe coupling that caused injuries).

**10.** 29 P.3d at 842; *see Reeder,* 256 P.2d at 828–29; *Ambriz,* 319 P.2d at 5–6; *Hanlon v. Lane,* 98 Ohio App.3d 148, 648 N.E.2d 26, 28 (1994); *Lamb,* 570 N.W.2d at 68.

required that the actual or constructive knowledge be of the *particular defect* that caused the injury.[11] Indeed, in the cases relied on by the court's opinion in which liability was imposed or a possible duty to warn was found, the defendant had actual or constructive knowledge of the particular defect that caused the injury.[12] None of these authorities suggests that liability could exist in the absence of such knowledge. The court's opinion claims that there was evidence that Shoreside had constructive knowledge of the "increased risk" to which Robles was exposed, because Shoreside knowingly recirculated improperly refilled propane tanks into the Seward community.[13] However, this constructive knowledge of "increased risk" is not the same thing as knowledge of the actual defect that caused the injury—the defect in Gannaway's tank—and the court's opinion presents no authority that supports the proposition that liability should be imposed when the defendant has no constructive knowledge of the defect that caused the injury.

Finally, a decision by the Hawaii Supreme Court, *Acoba v. General Tire, Inc.*,[14] also supports the proposition that no duty to warn should be created here. The court's attempt to distinguish *Acoba* is not convincing. In *Acoba*, a tire repairman died as a result of a tire explosion caused by a defect in the rim assembly.[15] The repairman's wife sued, among others, the tire manufacturer, General Tire, claiming that it "negligently failed to warn [the repairman] of the dangers of explosive separation of tire rim and lock ring."[16] The Hawaii Supreme Court noted the principle that "a manufacturer owes a duty to warn regarding its *own product*, not regarding products it did not produce, sell, or control."[17] Because General Tire "did not produce, sell, or have control over the production of the subject rim assembly," the court affirmed summary judgment in favor of General Tire, noting that "General Tire [has no] duty to warn of the dangers of Firestone's rim and lock ring simply because the tire [is] compatible with Firestone's product."[18]

The court's opinion in this case attempts to distinguish *Acoba* by claiming that propane is an "inherently dangerous product," while a tire is not.[19] This distinction, even if true, is irrelevant, because without special handling and maintenance, both propane and the tire in *Acoba* have the potential to cause injury and death, as evidenced by the accidents in this case and *Acoba*. The court also claims that "unlike the manufacturers in *Acoba*, Shoreside exercised significant control over the defective product," and that there was evidence that Shoreside's conduct "enhanced the risk of injury."[20] However, as already noted, Robles presented no evidence that

---

11. See *Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198, 1208 (Ind.App.1998) (no section 388 liability, in part because there was no evidence that the defendant "had either actual or constructive knowledge of the leaking pipe that caused the gas explosion"); *Jones v. Hittle Serv., Inc.*, 219 Kan. 627, 549 P.2d 1383, 1391 (1976) ("[T]he duty to warn arises only when the supplier knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied. None of the defendants here knew or had reason to know that the propane gas would be piped through a leaky line and from there filter through the earth to a place where it might collect.") (quotation and citation omitted).

12. See *Skelly Oil Co.*, 171 F.2d at 674 (gas supplier assumes duty of reasonable care when supplier receives notice of defects in customer's gas lines and supplier undertakes to inspect the defects); *Ambriz*, 319 P.2d at 5–6 (gas company has duty to inspect particular site with reasonable care when company has actual or constructive notice of defects in the gas system at that site);

*Clay*, 39 N.W.2d at 820–22 (gas company has duty to inspect customer's gas system where company has "knowledge of a dangerous condition" there); *Reeder*, 256 P.2d at 828–29 (gas company installing gas system may have a duty to inspect if the company has "actual or constructive knowledge of leaks in the system").

13. See 29 P.3d at 844.

14. 92 Hawai'i 1, 986 P.2d 288 (1999).

15. See *id.* at 292.

16. *Id.* at 304.

17. *Id.* at 305 (emphasis in original).

18. *Id.*

19. 29 P.3d at 844 n.18.

20. *Id.*

Shoreside exercised any control at all over the defective product, Gannaway's tank.[21] In *Acoba,* the court noted that the plaintiff "submitted no evidence to show that the tire or the inner tube failed during the accident or created the alleged defect in the rim assembly that caused it to explode." [22] Similarly, because Gannaway testified that he "could not recall if he had ever filled his tank at Shoreside," [23] Robles presented no evidence to show that Shoreside's conduct had anything to do with the defective tank at all.

Because the duty to warn imposed by the court's opinion is ill-defined and not supported by authority, I dissent from the court's holding that evidence of Shoreside's tank-filling practices was admissible as relevant to a duty to warn on Shoreside's part.